# DISTRICT OF COLUMBIA ET AL. *v.* GREATER WASHINGTON BOARD OF TRADE

No. 91–1326.   Argued November 3, 1992—Decided December 14, 1992

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, BLACKMUN, O'CONNOR, SCALIA, KENNEDY, and SOUTER, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 133.

*Donna M. Murasky*, Assistant Corporation Counsel of the District of Columbia, argued the cause for petitioners. With her on the briefs were *John Payton*, Corporation Counsel, and *Charles Reischel*, Deputy Corporation Counsel.

*Lawrence P. Postol* argued the cause for respondent. With him on the brief was *John N. Erlenborn.*[*]

JUSTICE THOMAS delivered the opinion of the Court.

The District of Columbia requires employers who provide health insurance for their employees to provide equivalent health insurance coverage for injured employees eligible for

---

[*]Briefs of *amici curiae* urging reversal were filed for the State of Connecticut et al. by *Richard Blumenthal*, Attorney General of Connecticut, and *Arnold B. Feigin*, Assistant Attorney General, and *Scott Harshbarger*, Attorney General of Massachusetts; for the State of Oklahoma *ex rel.* Dave Renfro, Commissioner of Labor, et al. by *Susan B. Loving*, Attorney General, *Rabindranath Ramana*, Assistant Attorney General, *Michael M. Sykes*, and *Kayla A. Bower*; for the American Federation of Labor and Congress of Industrial Organizations by *Marsha S. Berzon* and *Laurence Gold*; and for the American Optometric Association by *Bennett Boskey*, *Ellis Lyons*, and *Edward A. Groobert*.

Briefs of *amici curiae* urging affirmance were filed for the United States by *Solicitor General Starr, Deputy Solicitor General Mahoney, Christopher J. Wright, Allen H. Feldman, Nathaniel I. Spiller*, and *Deborah Greenfield*; for the Chamber of Commerce of the United States by *Mona C. Zeiberg* and *Hollis T. Hurd*; for the Connecticut Business and Industry Association by *Daniel L. FitzMaurice*; and for the District of Columbia Insurance Federation by *William A. Dobrovir* and *Lawrence H. Mirel*.

*Steven S. Zaleznick* and *Cathy Ventrell-Monsees* filed a brief for the American Association of Retired Persons as *amicus curiae*.

workers' compensation benefits.  We hold that this require-
ment is pre-empted by the Employee Retirement Income
Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29
U. S. C. § 1001 *et seq.* (1982 ed. and Supp. II).

## I

ERISA sets out a comprehensive system for the federal
regulation of private employee benefit plans, including both
pension plans and welfare plans.  A "welfare plan" is defined
in § 3 of ERISA to include, *inter alia,* any "plan, fund, or
program" maintained for the purpose of providing medical
or other health benefits for employees or their beneficiaries
"through the purchase of insurance or otherwise."  § 3(1),
29 U. S. C. § 1002(1).  Section 4 defines the broad scope of
ERISA coverage.  Subject to certain exemptions, ERISA
applies generally to all employee benefit plans sponsored
by an employer or employee organization.  § 4(a), 29 U. S. C.
§ 1003(a).  Among the plans exempt from ERISA coverage
under § 4(b) are those "maintained solely for the purpose of
complying with applicable workmen's compensation laws or
unemployment compensation or disability insurance laws."
§ 4(b)(3), 29 U. S. C. § 1003(b)(3).

ERISA's pre-emption provision assures that federal regu-
lation of covered plans will be exclusive.  Section 514(a) pro-
vides that ERISA "shall supersede any and all State laws
insofar as they may now or hereafter relate to any employee
benefit plan" covered by ERISA.  § 514(a), 29 U. S. C.
§ 1144(a).  Several categories of state laws, such as generally
applicable criminal laws and laws regulating insurance,
banking, or securities, are excepted from ERISA pre-
emption by § 514(b), 29 U. S. C. § 1144(b), but none of these
exceptions is at issue here.

Effective March 6, 1991, the District of Columbia Workers'
Compensation Equity Amendment Act of 1990, 37 D. C. Reg-
ister 6890 (Nov. 1990), amended several portions of the Dis-
trict's workers' compensation law, D. C. Code Ann. §§ 36–301

to 36–345 (1981 and Supp. 1992). Section 2(c)(2) of the Equity Amendment Act added the following requirement:

> "Any employer who provides health insurance coverage for an employee shall provide health insurance coverage equivalent to the existing health insurance coverage of the employee while the employee receives or is eligible to receive workers' compensation benefits under this chapter." D. C. Code Ann. § 36–307(a–1)(1) (Supp. 1992).

Under § 2(c)(2), the employer must provide such health insurance coverage for up to 52 weeks "at the same benefit level that the employee had at the time the employee received or was eligible to receive workers' compensation benefits." § 36–307(a–1)(3).

Respondent Greater Washington Board of Trade, a nonprofit corporation that sponsors health insurance coverage for its employees, filed this action against the District of Columbia and Mayor Sharon Pratt Kelly seeking to enjoin enforcement of § 2(c)(2) on the ground that the "equivalent" benefits requirement is pre-empted by § 514(a) of ERISA. The District Court granted petitioners' motion to dismiss. App. to Pet. for Cert. 21a. Petitioners conceded that § 2(c)(2) "relate[s] to" an ERISA-covered plan in the sense that the benefits required under the challenged law "are set by reference to covered employee benefit plans." Id., at 22a. Relying on our opinion in Shaw v. Delta Air Lines, Inc., 463 U. S. 85 (1983), however, the District Court held that § 2(c)(2) is not pre-empted because it also relates to respondent's workers' compensation plan, which is exempt from ERISA coverage, and because respondent could comply with § 2(c)(2) "by creating a 'separate administrative unit' to administer the required benefits." App. to Pet. for Cert. 24a (quoting Shaw, supra, at 108).

The Court of Appeals reversed. 292 U. S. App. D. C. 209, 948 F. 2d 1317 (1991). The court held that pre-emption of

§ 2(c)(2) is compelled by the plain meaning of § 514(a) and by the structure of ERISA. *Id.*, at 215–216, 948 F. 2d, at 1323–1324. In the court's view, ERISA pre-empts a law that relates to a covered plan and is not excepted from preemption by § 514(b), regardless of whether the law also relates to an exempt plan. *Ibid.* The Court of Appeals further concluded that this result would advance the policies and purposes served by ERISA pre-emption. *Id.*, at 217–218, 948 F. 2d, at 1325–1326. By tying the benefit levels of the workers' compensation plan to those provided in an ERISA-covered plan, "the Equity Amendment Act could have a serious impact on the administration and content of the ERISA-covered plan." *Id.*, at 217, 948 F. 2d, at 1325. Because the opinion below conflicts with the Second Circuit's decision in *R. R. Donnelley & Sons Co.* v. *Prevost*, 915 F. 2d 787 (1990), cert. denied, 499 U. S. 947 (1991), which upheld against a pre-emption challenge a Connecticut law substantially similar to § 2(c)(2), we granted certiorari. 503 U. S. 970 (1992). We now affirm.

## II

We have repeatedly stated that a law "relate[s] to" a covered employee benefit plan for purposes of § 514(a) "if it has a connection with or reference to such a plan." *Shaw, supra,* at 97. *E. g., Ingersoll-Rand Co.* v. *McClendon,* 498 U. S. 133, 139 (1990); *FMC Corp.* v. *Holliday,* 498 U. S. 52, 58 (1990); *Mackey* v. *Lanier Collection Agency & Service, Inc.,* 486 U. S. 825, 829 (1988); *Pilot Life Ins. Co.* v. *Dedeaux,* 481 U. S. 41, 47 (1987); *Metropolitan Life Ins. Co.* v. *Massachusetts,* 471 U. S. 724, 739 (1985). This reading is true to the ordinary meaning of "relate to," see Black's Law Dictionary 1288 (6th ed. 1990), and thus gives effect to the "deliberately expansive" language chosen by Congress. *Pilot Life, supra,* at 46. See also *Morales* v. *Trans World Airlines, Inc.,* 504 U. S. 374, 383 (1992). Under § 514(a), ERISA preempts any state law that refers to or has a connection with

covered benefit plans (and that does not fall within a § 514(b) exception) "even if the law is not specifically designed to affect such plans, or the effect is only indirect," *Ingersoll-Rand, supra,* at 139, and even if the law is "consistent with ERISA's substantive requirements," *Metropolitan Life, supra,* at 739.[1]

Section 2(c)(2) of the District's Equity Amendment Act specifically refers to welfare benefit plans regulated by ERISA and on that basis alone is pre-empted. The health insurance coverage that § 2(c)(2) requires employers to provide for eligible employees is measured by reference to "the existing health insurance coverage" provided by the employer and "shall be at the same benefit level." D. C. Code Ann. §§ 36–307(a–1)(1) and (3) (Supp. 1992). The employee's "existing health insurance coverage," in turn, is a welfare benefit plan under ERISA § 3(1), because it involves a fund or program maintained by an employer for the purpose of providing health benefits for the employee "through the purchase of insurance or otherwise." § 3(1), 29 U. S. C. § 1002(1).[2] Such employer-sponsored health insurance programs are subject to ERISA regulation, see § 4(a), 29 U. S. C. § 1003(a), and any state law imposing requirements by refer-

---

[1] Pre-emption does not occur, however, if the state law has only a "tenuous, remote, or peripheral" connection with covered plans, *Shaw* v. *Delta Air Lines, Inc.,* 463 U. S. 85, 100, n. 21 (1983), as is the case with many laws of general applicability, see *Mackey,* 486 U. S., at 830–838, and n. 12; cf. *Ingersoll-Rand,* 498 U. S., at 139.

[2] In *Fort Halifax Packing Co.* v. *Coyne,* 482 U. S. 1 (1987), we construed the word "plan" to connote some minimal, ongoing "administrative" scheme or practice, and held that "a one-time, lump-sum payment triggered by a single event" does not qualify as an employer-sponsored benefit plan. *Id.,* at 12. Petitioners do not contend that employers in the District of Columbia provide health insurance for their employees without thereby administering welfare plans within the meaning of ERISA, and petitioners concede that the existing health insurance sponsored by respondent constitutes an ERISA plan. Tr. of Oral Arg. 14.

ence to such covered programs must yield to ERISA.[3]  This conclusion is consistent with *Mackey* v. *Lanier Collection Agency*, which struck down a Georgia law that specifically exempted ERISA plans from a generally applicable garnishment procedure.  486 U. S., at 828, n. 2, and 829–830.  It also follows from *Ingersoll-Rand*, where we held that ERISA § 514(a) pre-empted a Texas common-law cause of action for wrongful discharge based on an employer's desire to avoid paying into an employee's pension fund.  Even though the employee sought no pension benefits, only "lost future wages, mental anguish and punitive damages," 498 U. S., at 136 (internal quotation marks omitted), we held the claim pre-empted because it was "premised on" the existence of an ERISA-covered pension plan.  *Id.*, at 140.

It makes no difference that § 2(c)(2)'s requirements are part of the District's regulation of, and therefore also "relate to," ERISA-exempt workers' compensation plans.  The exemptions from ERISA coverage set out in § 4(b), 29 U. S. C. § 1003(b), do not limit the pre-emptive sweep of § 514 once it is determined that the law in question relates to a covered plan.  See *Alessi* v. *Raybestos-Manhattan, Inc.*, 451 U. S. 504, 525 (1981) ("It is of no moment that New Jersey intrudes indirectly, through a workers' compensation law, rather than directly, through a statute called 'pension regulation'").  *Shaw* v. *Delta Air Lines, Inc.*, 463 U. S. 85 (1983), does not support petitioners' position.  *Shaw* dealt, in relevant part, with a New York disability law that required employers to pay weekly benefits to disabled employees equal to " 'one-half of the employee's average weekly wage.' "  *Id.*, at 90, n. 4 (quoting N. Y. Work. Comp. Law § 204.2 (McKinney Supp. 1982–1983)).  We held that this law was not pre-

---

[3] ERISA does not pre-empt § 2(c)(2) to the extent its requirements are measured only by reference to "existing health insurance coverage" provided under plans that are exempt from ERISA regulation, such as "governmental" or "church" plans, see ERISA §§ 4(b)(1) and (2), 29 U. S. C. §§ 1003(b)(1) and (2).

empted by § 514(a) because it related exclusively to exempt employee benefit plans "maintained solely for the purpose of complying with applicable . . . disability insurance laws" within the meaning of § 4(b)(3), 29 U. S. C. § 1003(b)(3). See 463 U. S., at 106–108. The fact that employers could comply with the New York law by administering the required disability benefits through a multibenefit ERISA plan did not mean that the law related to such ERISA plans for preemption purposes. See *id.*, at 108. We simply held that as long as the employer's disability plan, "as an administrative unit, provide[d] only those benefits required by" the New York law, it could qualify as an exempt plan under ERISA § 4(b)(3). *Id.*, at 107. Thus, unlike § 2(c)(2) of the District's Equity Amendment Act, the New York statute at issue in *Shaw* did not "relate to" an ERISA-covered plan.

Petitioners nevertheless point to *Metropolitan Life Ins. Co.* v. *Massachusetts,* 471 U. S. 724 (1985), in which we described *Shaw* as holding that "the New York Human Rights Law and that State's Disability Benefits Law 'relate[d] to' welfare plans governed by ERISA." *Id.*, at 739. Relying on this dictum and their reading of *Shaw*, petitioners argue that § 514(a) should be construed to require a two-step analysis: If the state law "relate[s] to" an ERISA-covered plan, it may still survive pre-emption if employers could comply with the law through separately administered plans exempt under § 4(b). See Tr. of Oral Arg. 16–17. But *Metropolitan Life* construed only the scope of § 514(b)(2)(A)'s safe harbor for state laws regulating insurance, see 471 U. S., at 739–747; it did not purport to add, by its passing reference to *Shaw*, any further gloss on § 514(a). And although we did conclude in *Shaw* that both New York laws at issue there related to "employee benefit plan[s]" in general, 463 U. S., at 100, only the Human Rights Law, which barred discrimination by ERISA plans, fell within the pre-emption provision. See *id.*, at 100–106. As we have explained, the Disability Benefits Law up-

held in *Shaw*—though mandating the creation of a "welfare plan" as defined in ERISA[4]—did not relate to a welfare plan subject to ERISA regulation. Section 2(c)(2) does, and that is the end of the matter. We cannot engraft a two-step analysis onto a one-step statute.

The judgment of the Court of Appeals is accordingly

*Affirmed.*

JUSTICE STEVENS, dissenting.

The basic question that this case presents is whether Congress intended to prevent a State from computing workers' compensation benefits on the basis of the entire remuneration of injured employees when a portion of that remuneration is provided by an employee benefit plan. By converting unnecessarily broad dicta interpreting the words "relate to" as used in § 514(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U. S. C. § 1144(a), into a rule of law, and by underestimating the significance of the exemption of workers' compensation plans from the coverage of the Act, the Court has reached an incorrect conclusion in an unusually important case.

In today's world the typical employee's compensation is not just her take-home pay; it often includes fringe benefits such as vacation pay and health insurance. If an employee loses her job, by reason of either a wrongful discharge or a negligently inflicted physical injury, normal contract or tort principles would allow her to recover damages measured by her entire loss of earnings—including the value of fringe benefits such as health insurance. If I understand the Court's reasoning today, a state statute that merely announced that basic rule of damages law would be pre-empted

---

[4] "Welfare plans" include plans providing "benefits in the event of sickness, accident, [or] disability." § 3(1), 29 U. S. C. § 1002(1).

by ERISA if it "specifically refers" to each component of the damages calculation. *Ante,* at 130.[1]

Workers' compensation laws provide a substitute for tort actions by employees against their employers. They typically base the amount of the compensation award on the level of the employee's earnings at the time of the injury. In the District of Columbia's workers' compensation law, for example, an employee's "average weekly wages" provide the basic standard for computing the award regardless of the nature of the injury. D. C. Code Ann. § 36–308 (1988 and Supp. 1992). Because an employee who receives health insurance benefits typically has a correspondingly reduced average weekly wage, the District decided to supplement the standard level of workers' compensation with a component reflecting any health insurance benefits the worker receives. The Court seems to be holding today that such a supplement may never be measured by the level of the employee's health insurance coverage—at least if the state statutes or regulations specifically refer to that component of the calculation.

It is true, as the Court points out, that in *Shaw* v. *Delta Air Lines, Inc.,* 463 U. S. 85, 96–97 (1983), we stated that a law "related to" an employee benefit plan, "in the normal sense of the phrase, if it has a connection with or reference to such a plan." It is also true that we have repeatedly quoted that language in later opinions.[2] Indeed, it has been

---

[1] Similar arguments have been considered and rejected in several cases. See *Martori Bros. Distributors* v. *James-Massengale,* 781 F. 2d 1349, 1358–1359 (CA9), modified, 791 F. 2d 799, cert. denied, 479 U. S. 949 (1986); *Teper* v. *Park West Galleries, Inc.,* 431 Mich. 202, 216, 427 N. W. 2d 535, 541 (1988); *Schultz* v. *National Coalition of Hispanic Mental Health and Human Services Organizations,* 678 F. Supp. 936, 938 (DC 1988); *Jaskilka* v. *Carpenter Technology Corp.,* 757 F. Supp. 175, 178 (Conn. 1991).

[2] See *Ingersoll-Rand Co.* v. *McClendon,* 498 U. S. 133, 138–139 (1990); *FMC Corp.* v. *Holliday,* 498 U. S. 52, 58–59 (1990); *Mackey* v. *Lanier Collection Agency & Service, Inc.,* 486 U. S. 825, 829 (1988); *Fort Halifax Packing Co.* v. *Coyne,* 482 U. S. 1, 11 (1987); *Pilot Life Ins. Co.* v. *Dedeaux,*

reiterated so often that petitioners did not challenge the proposition that the statute at issue in this case "related to" respondent's ERISA plan. It nevertheless is equally true that until today that broad reading of the phrase has not been necessary to support any of this Court's actual holdings.

Given the open-ended implications of today's holding and the burgeoning volume of litigation involving ERISA pre-emption claims,[3] I think it is time to take a fresh look at the intended scope of the pre-emption provision that Congress enacted. Let me begin by repeating the qualifying language in the *Shaw* opinion itself and by emphasizing one word in the statutory text that is often overlooked.

After explaining why the two New York statutes at issue related to benefit plans, we noted:

> "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan. Cf. *American Telephone and Telegraph Co.* v. *Merry*, 592 F. 2d 118, 121 (CA2 1979) (state garnishment of a spouse's pension income to enforce alimony and support orders is not pre-empted). The present litigation plainly does not present a borderline question, and we express no views about where it would be appropriate to draw the line." *Id.*, at 100, n. 21.

---

481 U. S. 41, 47–48 (1987); *Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U. S. 724, 739 (1985).

[3] Several years ago a District Judge who had read "nearly 100 cases about the reach of the ERISA preemption clause" concluded that "common sense should not be left at the courthouse door." See *Schultz* v. *National Coalition of Hispanic Mental Health and Human Services Organizations*, 678 F. Supp., at 938. A recent LEXIS search indicates that there are now over 2,800 judicial opinions addressing ERISA pre-emption. This growth may be a consequence of the growing emphasis on the meaning of the words "relate to," thus pre-empting reliance on what the District Judge referred to as "common sense."

In deciding where that line should be drawn, I would begin by emphasizing the fact that the so-called "pre-emption" provision in ERISA does not use the word "pre-empt." It provides that the provisions of the federal statute shall "*supersede* any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U. S. C. § 1144(a) (emphasis added). Thus the federal statute displaces state regulation in the field that is regulated by ERISA; it expressly disavows an intent to supersede state regulation of exempt plans; and its text is silent about possible pre-emption of state regulation of subjects not regulated by the federal statute. Thus, if we were to decide this case on the basis of nothing more than the text of the statute itself, we would find no pre-emption (more precisely, no "supersession") of the District's regulation of health benefits for employees receiving workers' compensation because that subject is entirely unregulated by ERISA.[4]

I would not decide this case on that narrow ground, however, because both the legislative history of ERISA and

---

[4] See, *e. g.*, *Cipollone* v. *Liggett Group, Inc.*, 505 U. S. 504, 516 (1992): "Consideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.' *Rice* v. *Santa Fe Elevator Corp.*, 331 U. S. 218, 230 (1947). Accordingly, '"[t]he purpose of Congress is the ultimate touchstone"' of pre-emption analysis. *Malone* v. *White Motor Corp.*, 435 U. S. 497, 504 (1978) (quoting *Retail Clerks* v. *Schermerhorn*, 375 U. S. 96, 103 (1963)).

. . . "In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, see *Pacific Gas & Elec. Co.* v. *Energy Resources Conservation and Development Comm'n*, 461 U. S. 190, 204 (1983), or if federal law so thoroughly occupies a legislative field '"as to make reasonable the inference that Congress left no room for the States to supplement it."' *Fidelity Fed. Sav. & Loan Assn.* v. *De la Cuesta*, 458 U. S. 141, 153 (1982) (quoting *Rice* v. *Sante Fe Elevator Corp.*, 331 U. S., at 230)."

prior holdings by this Court have given the supersession provision a broader reading. Thus, for example, in *Shaw* itself we held that the New York Human Rights Law, which prohibited employers from structuring their employee benefit plans in a manner that discriminated on the basis of pregnancy, was pre-empted even though ERISA did not contain any superseding regulatory provisions. 463 U. S., at 98. State laws that directly regulate ERISA plans, or that make it necessary for plan administrators to operate such plans differently, "relate to" such plans in the sense intended by Congress. In my opinion, a state law's mere reference to an ERISA plan is an insufficient reason for concluding that it is pre-empted—particularly when the state law itself is related almost solely to plans that Congress expressly excluded from the coverage of ERISA. It is anomalous to conclude that ERISA has superseded state regulation in an area that is expressly excluded from the coverage of ERISA.

The statute at issue in this case does not regulate any ERISA plan or require any ERISA plan administrator to make any changes in the administration of such a plan. Although the statute may grant injured employees who receive health insurance a better compensation package than those who are not so insured, it does so only to prevent a converse windfall going to injured employees who receive high weekly wages and little or no health insurance coverage.[5] Even if the District's statute did encourage an employer to pay higher wages instead of providing better fringe benefits, that would surely be no reason to infer a congressional intent to supersede state regulation of a category of compensation programs that it exempted from federal coverage. Moreover, by requiring an injured worker's compensation to reflect his entire pay package, the statute attempts to replace *fully* the lost earning power of every injured employee. Noth-

---

[5] One of the statute's stated goals was "to promote a fairer system of compensation." Preamble to District of Columbia's Workers' Compensation Equity Amendment Act of 1990, 37 D. C. Register 6890 (Nov. 1990).

ing in ERISA suggests an intent to supersede the State's efforts to enact fair and complete remedies for work-related injuries; it is difficult to imagine how a State could measure an injured worker's health benefits without referring to the specific health benefits that worker receives. Any State that wishes to effect the equitable goal of the District's statute will be forced by the Court's opinion to require a predetermined rate of health insurance coverage that bears no relation to the compensation package of each injured worker. The Court thereby requires workers' compensation laws to shed their most characteristic element: postinjury compensation based on each individual worker's preinjury level of compensation.

Instead of mechanically repeating earlier dictionary definitions of the word "relate" as its only guide to decision in an important and difficult area of statutory construction, the Court should pause to consider, first, the wisdom of the basic rule disfavoring federal pre-emption of state laws, and second, the specific concerns identified in the legislative history as the basis for federal pre-emption. The most expansive statement of that purpose was quoted in our opinion in *Shaw*. As explained by Congressman Dent, the "crowning achievement" of the legislation was the " 'reservation to Federal authority [of] the sole power to regulate the field of employee benefit plans. With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent State and local regulation.' " *Id.*, at 99 (quoting 120 Cong. Rec. 29197 (1974)).

The statute at issue in this case does not regulate even one inch of the pre-empted field, and poses no threat whatsoever of conflicting and inconsistent state regulation. By its holding today the Court enters uncharted territory. Where that holding will ultimately lead, I do not venture to predict. I am persuaded, however, that the Court has already taken a step that Congress neither intended nor foresaw.

Accordingly, I respectfully dissent.