No. 72,751

THE LAWRENCE PAPER COMPANY, a corporation, *Appellant*, v.
GEORGE R. GOMEZ, Workers Compensation Director of the
State of Kansas, and THE STATE OF KANSAS, *Appellees*.

(897 P.2d 134)

Opinion filed
June 2, 1995.

*J. D. Lysaught*, of Mustain, Higgins, Kolich, Lysaught & Tomasic, Chartered, of Kansas City, argued the cause and was on the briefs for appellant.

*C. Michael Lennen*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *A. J. Kotich*, of Kansas Department of Human Resources, was with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is a federal preemption case. The Lawrence Paper Company (LPC) seeks a judgment under K.S.A. 60-1701 *et seq.* declaring that a provision of the Kansas Workers Compensation Act (KWCA), K.S.A. 44-501 *et seq.*, is preempted by the federal Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* (1988).

K.S.A. 44-511(a)(2)(E), the Kansas provision in question, requires that the value of discontinued employer-paid insurance and employer contributions to pension and profit-sharing plans be factored into the computation of disability benefits for injured employees.

The district court held for the defendants George R. Gomez, Workers Compensation Director, and the State, reasoning that

ERISA does not preempt K.S.A. 44-511(a)(2)(E). The district court's conclusion rested primarily on the following determinations:

"1. The challenged provision of the KWCA does not materially alter an existing administrative scheme under ERISA, nor does it affect the primary function of plaintiff's benefit plans.

"2. Any relationship between the challenged provision of the KWCA and any ERISA-covered plan maintained by plaintiff is at most remote, tenuous and peripheral and does not invoke the preemptive or supersedure provisions of 29 U.S.C. § 1144."

The issue is simply whether the way in which the KWCA, through K.S.A. 44-511(a)(2)(E), defines an employee's compensation for purposes of computing disability benefits is preempted by ERISA § 514(a), 29 U.S.C. § 1144(a) (1988). LPC seeks to prevent the State from adding the value of discontinued employer-paid insurance, pension, and profit-sharing benefits into the calculation of workers compensation benefits, which are based on an employee's compensation at the time of injury.

Our jurisdiction is under K.S.A. 60-1709 (declaratory judgments) and K.S.A. 20-3017 (transfer from the Court of Appeals). We hold that the provisions of K.S.A. 44-511(a)(2)(E) do not "relate to" LPC's employee benefit plans within the meaning of ERISA's preemption provision, § 514(a), 29 U.S.C. § 1144(a), and consequently are not subject to preemption. We affirm the district court.

The preemption issue is one of statutory construction. Our standard of review is unlimited. See *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

## FACTS

The material facts are not in dispute. LPC is a Kansas corporation that engages in interstate commerce. It is neither a religious nor a governmental entity. LPC maintains a health insurance plan, a 401(k) savings and profit-sharing plan, and a pension plan for its employees who choose to participate. The employee benefit plans are within the scope of ERISA, and none of the above-described plans are maintained for purposes of complying with the KWCA.

Contributions to the plans are made on behalf of and for the benefit of eligible employees.

LPC is a self-insurer under K.S.A. 44-532. It maintains self-insured status solely for purposes of complying with the KWCA.

## DISCUSSION

ERISA preemption is a question of federal law. Decisions of the United States Supreme Court, to the extent they are applicable, control. *Ritchie v. Johnson*, 158 Kan. 103, 117, 144 P.2d 925 (1944). If there is no controlling Supreme Court opinion, the weight of authority in the lower federal courts is considered persuasive. 158 Kan. at 118.

### K.S.A. 44-511(a)(2)(E) and the KWCA

Under the KWCA, an injured employee ordinarily is entitled to receive benefits based upon a percentage of the employee's "average weekly wage." For permanent and total disabilities and scheduled injuries, compensation ordinarily is paid at 66-⅔ percent of an employee's average gross weekly wage. This compensation level is limited by statutorily established maximum levels of weekly compensation, by limits on total benefits paid, and by limits on the number of weeks for which benefits may be paid. K.S.A. 44-510c and K.S.A. 44-510d. The value of discontinued employer-paid life insurance, health and accident insurance, and employer contributions to pension and profit-sharing plans is encompassed in the "average weekly wage" calculation. K.S.A. 44-511(a)(2)(E) and (b). The term "wage" means the salary or hourly pay, plus "additional compensation." K.S.A. 44-511(a)(3). "Additional compensation" includes, among other things, gratuities, cash bonuses, employer-provided room and board, and also the following:

"*employer-paid life insurance, health and accident insurance and employer contributions to pension and profit sharing plans.* . . . Additional compensation shall not include the value of such remuneration until and unless such remuneration is discontinued. If such remuneration is discontinued subsequent to a computation of average gross weekly wages under this section, there shall be a recomputation to include such discontinued remuneration." (Emphasis added.) K.S.A. 44-511(a)(2)(E).

The limitation that fringe benefits are added into the average weekly wage only if such benefits are discontinued is supported by logic and common sense. The limitation prevents double recovery by an injured employee whose employer continues to provide fringe benefits during the employee's period of disability. See *Maxwell v. City of Topeka*, 5 Kan. App. 2d 5, 10, 611 P.2d 161, *rev. denied* 228 Kan. 807 (1980) (noting that "the logical reason for the [K.S.A. 44-511(a)(2)(E)] provisos appears to have been a legislative attempt to add fringe benefits into a claimant's average weekly wage only when such benefits have, in fact, been cut off from the claimant").

The KWCA imposes few specific restrictions on how employers must carry out their statutory obligation to pay the required benefits. Generally, workers compensation payments must be made "at the same time, place and in the same manner as the wages of the worker were payable at the time of the accident," subject to certain exceptions. K.S.A. 44-512. In addition, every employer must maintain adequate workers compensation insurance, qualify as a self-insurer, or belong to a qualified group-funded workers compensation pool in order to "secure the payment of compensation" to its injured employees. K.S.A. 44-532.

The KWCA does not mandate which payment-security option an employer must exercise. It does not mandate that employers set up ERISA-covered benefit plans for their employees or control the terms of any such plan should an employer elect to provide one. Employers may provide, refuse to provide, modify, or cancel any ERISA-covered benefit plan without violating any provision in the KWCA.

The Kansas Legislature, in K.S.A. 44-511(a)(2)(E), elected to define an employee's compensation broadly to include fringe benefits such as employer-paid insurance, profit-sharing, and pension contributions. The provision challenged by LPC is neither new nor unique. It first appeared in the KWCA in 1974 and remains today in substantially the same form. L. 1974, ch. 203, § 18. Kansas' approach with respect to fringe benefits is shared by many states. See, *e.g.*, Ala. Code § 25-5-57 (1992) ("average weekly earnings" includes "allowances of any character," which includes employer-

paid medical and life insurance premiums); Alaska Stat. § 23.30.265(15) (1990) ("gross earnings" includes a percentage of the total employer contributions to a qualified pension plan in the two years preceding the injury); Fla. Stat. § 440.02(24) (1993) ("wages" includes employer contributions for health insurance for the employee).

## Scope of ERISA

ERISA establishes comprehensive and uniform federal regulations for private employee pension and welfare benefit plans. *District of Columbia v. Greater Washington Board of Trade*, 506 U.S. 125, 121 L. Ed. 2d 513, 518, 113 S. Ct. 580 (1992).

"Subject to certain exemptions, ERISA applies generally to all employee benefit plans sponsored by an employer or employee organization. § 4(a), 29 U.S.C. § 1003(a). Among the plans exempt from ERISA coverage under § 4(b) are those 'maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws.' § 4(b)(3), 29 U.S.C. § 1003(b)(3)." 506 U.S. 127.

LPC maintains employee welfare and pension benefit plans subject to ERISA, and such plans are not exempt under § 4(b)(3), 29 U.S.C. 1003(b)(3) (1988). The record is less clear, however, on the nature of LPC's "plan" for paying workers compensation benefits. LPC's counsel said in response to a question at oral argument that LPC pays workers compensation benefits through its own plan, administered separately from the ERISA-covered plans it offers employees, stating, "[t]heir [LPC] personnel director is over that type of administration." LPC's ERISA-covered health care plan provides support for counsel's response. The plan specifically *excludes* from its coverage any "occupational" injury or illness "for which the individual is entitled to benefits under any workers' compensation law." Furthermore, in response to a request from defendants to admit that "there is no connection between [LPC's] status as a self-insurer under the Workers' Compensation Act and any employee benefit plan," the LPC alleged no direct administrative connection. Rather, LPC asserted only the economic link between an increase in employer-paid ERISA fringe benefits and an increase in potential liability under the KWCA.

## ERISA Preemption

The ERISA preemption provision, § 514(a), 29 U.S.C. § 1144(a), assures exclusive federal regulation of covered plans. The intention of Congress in passing § 514(a) was

" 'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . ., [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.' *Ingersoll-Rand*, 498 U.S., at 142." *N.Y. Conference of Blue Cross v. Travelers Ins.*, 514 U.S. ____, 131 L. Ed. 2d 695, 115 S. Ct. 1671, 1677 (1995).

An early ERISA preemption case noted that "[p]reemption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakably so ordained.' " *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 522, 68 L. Ed. 2d 402, 101 S. Ct. 1895 (1981) (quoting *Chicago & N.W. Tr. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317, 67 L. Ed. 2d 258, 101 S. Ct. 1124 [1981]). A decade after *Alessi*, the Supreme Court seemed to abandon the principle of disfavored federal preemption in ERISA cases, instead emphasizing the broad language of § 514(a), superseding all state laws that "relate to" ERISA plans. *Washington Board of Trade*, 506 U.S. at 129-30. A close reading of *Blue Cross* suggests that the Court has backed away from, or at least tempered, the broad § 514(a) interpretation suggested in *Washington Board of Trade*. See *Blue Cross*, 115 S. Ct. at 1676-80.

## *Washington Board of Trade*

We next address LPC's contention that *Washington Board of Trade* controls the outcome of the instant case. LPC argues that *Washington Board of Trade* raised an "identical question" to the one now before us and answered it in favor of ERISA preemption. We do not agree either that the questions are identical or that *Washington Board of Trade* controls.

*Washington Board of Trade* preempted the District of Columbia's workers compensation law which, in 1991, added the following requirement:

"Any employer who provides health insurance coverage for an employee shall provide health insurance coverage *equivalent to* the existing health insurance coverage of the employee while the employee receives or is eligible to receive workers' compensation benefits under this chapter." D.C. Code Ann. § 36-307(a-1)(1) (1992 Supp.) (Emphasis added).

The Greater Washington Board of Trade, a nonprofit corporation that provided health insurance coverage for its employees, challenged the "equivalent"-benefits requirement as preempted by ERISA. The United States Supreme Court agreed, holding that the District of Columbia law "specifically refers to welfare benefit plans regulated by ERISA and on that basis alone is pre-empted." *Washington Board of Trade,* 506 U.S. at 130. The Court further said that "any state law imposing requirements by reference to such covered programs must yield to ERISA." 506 U.S. at 130-31.

The Court also observed that "[p]re-emption does not occur, however, if the state law has only a 'tenuous, remote, or peripheral' connection with covered plans." 121 L. Ed. 2d at 520 n.1.

Justice Stevens was the lone dissenter. He described the Court's analysis as entering "uncharted territory" and having "open-ended implications." 506 U.S. at 135-38. (Stevens, J., dissenting). Justice Stevens framed what he believed to be the issue as follows:

"The basic question that this case presents is whether Congress intended to prevent a State from computing workmen's compensation benefits on the basis of the entire remuneration of injured employees when a portion of that remuneration is provided by an employee benefit plan." 506 U.S. at 133 (Stevens, J., dissenting).

LPC correctly notes that Justice Stevens' statement of the issue in *Washington Board of Trade* seems also to target K.S.A. 44-511(a)(2)(E). LPC argues that the majority's failure to expressly challenge Justice Stevens' statement of the issue establishes its concurrence in his framing of it. Thus, LPC reasons that the outcome of preemption in *Washington Board of Trade* dictates the same result for K.S.A. 44-511(a)(2)(E). Had a majority of the Court ex-

pressly endorsed Justice Stevens' statement of the issue, then LPC's argument might be more persuasive, but no member of the majority joined any portion of the dissent. We limit our consideration of *Washington Board of Trade* to the majority opinion.

LPC next contends that preemption is required under *Washington Board of Trade* because "[t]he benefit levels of the Kansas Workers Compensation Act are tied directly to the monetary value of the ERISA-covered plans furnished by plaintiff." In support, LPC cites a similar statement in *Washington Board of Trade* discussing the Court of Appeals' opinion, which was affirmed. See 506 U.S. at 128-29.

It is true that under K.S.A. 44-511(a)(2)(E) there is a direct correlation between benefits provided to an employee under certain ERISA-covered benefit plans and the amount of disability benefits the employee may be eligible to receive under the KWCA. For every dollar that an employee, at the time of injury, receives in K.S.A. 44-511(a)(2)(E) fringe benefits which in many (but not all) cases will be paid through ERISA-covered plans, the employee is eligible to receive two-thirds of a dollar in disability benefits in the event the injured employee's fringe benefits are discontinued. The same correlation exists with respect to wages, gratuities, cash bonuses, employer-provided room and board, and payments in forms other than cash. The more an employee earns prior to a compensable disability, the more the employee is eligible to receive (and the employer liable to pay) in workers compensation.

Significantly, the KWCA imposes no mandate for the continuation of ERISA benefits (or their equivalent) to injured employees. Kansas merely looks to the value of ERISA benefits, if discontinued, as one factor to be included in the definition of "wages" used to compute workers compensation benefit levels—no less, no more. If an employee has been paid a weekly cash wage of $100, but receives no other benefits, the employee's "wage" for the purpose of determining workers compensation payment levels under the KWCA is $100. Similarly, under the KWCA, if an employee has received weekly compensation of $100 composed of $80 cash and discontinued ERISA benefits having a value of $20, the employee's "wage" is again $100. LPC, however, urges that the $20

compensation attributable to discontinued ERISA benefits be ignored.

The connection between ERISA plans and workers compensation benefits is significantly different in K.S.A. 44-511(a)(2)(E) from the connection reviewed in *Washington Board of Trade*. The District of Columbia law required that any employer who provided health insurance coverage for an employee must *continue*, for up to 52 weeks, the "existing health insurance coverage" or its equivalent at the same benefit level that the employee had at the time of injury. 506 U.S. at 130. Thus, the District of Columbia law did more than merely attach a dollar value to a fringe benefit and include a percentage of that value in computing workers compensation benefits. The District of Columbia law essentially mandated the continuation of ERISA-covered benefit plans. In practical effect, the law prevented an employer from discontinuing ERISA-covered health insurance coverage for employees receiving workers compensation benefits. 506 U.S. at 130-33.

Several circuits have considered ERISA preemption issues since *Washington Board of Trade*. *Certiorari* has been denied in each case. The Third Circuit has expressed the following guidelines for determining if a law "relates to" an ERISA plan, either directly or indirectly:

"'A rule of law relates to an ERISA plan if it is specifically designed to affect employee benefit plans, if it singles out such plans for special treatment, or if the rights or restrictions it creates are predicated on the existence of such a plan. . . .

'This does not end our inquiry, however. A state rule of law may be preempted even though it has no such direct nexus with ERISA plans if its effect is to dictate or restrict the choices of ERISA plans with regard to their benefits, structure, reporting and administration, or if allowing states to have such rules would impair the ability of a plan to function simultaneously in a number of states.'" *Keystone Chapter, Assoc. Builders v. Foley*, 37 F.3d 945, 955 (3d Cir. 1994), *cert. denied* 115 S. Ct. 1393 (1995) (quoting *United Wire v. Morristown Mem. Hosp.*, 995 F.2d 1179, 1192-93 [3d Cir.], *cert. denied* 114 S. Ct. 382 [1993]).

In *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 39 F.3d 1078 (10th Cir. 1994) (en banc), *cert. denied* 115 S. Ct. 1691 (1995), the Tenth Circuit examined whether ERISA preempted a Colorado law exempting 75 percent of "disposable earnings" from garnishment, where "earnings" was defined to include

"compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, *avails of any pension or retirement benefits, or deferred compensation plan, avails of health, accident, or disability insurance, or otherwise.*" Colo. Rev. Stat. § 13-54-104(1)(b) (1987). (Emphasis added.)

*Guidry* held that despite the law's "generic reference to pension benefits," it was "nonetheless one of general application" that did not come within ERISA's preemptive provision. 39 F.3d at 1086. *Guidry* reasoned that "[t]he Colorado garnishment exemption does not affect the calculation of plan benefits, nor does it otherwise impact the administration of the plan or the relationship among the plan entities." 39 F.3d at 1085.

In *Foley*, 37 F.3d 945, the Third Circuit considered whether ERISA preempted provisions of the Pennsylvania Prevailing Wage Act. The Prevailing Wage Act required public works contractors to pay employees the prevailing minimum wage, which was defined to include both a cash component and a benefits component. 37 F.3d at 950. The benefits component of the prevailing minimum wage was determined by " '[f]ringe benefits' paid or to be paid, including payment whether made directly or indirectly, to the workmen for sick, disability, death, other than Workmen's Compensation, medical, surgical, hospital, vacation, travel expense, retirement and pension benefits." 37 F.3d at 950. *Foley* held that ERISA preemption did not arise simply because "some of the benefits the Secretary is permitted to count in calculating the prevailing wage will come from ERISA plans." 37 F.3d at 957. The court continued: "[W]e do not believe ERISA requires a state to ignore the existence of ERISA benefits when considering overall remuneration to workers." 37 F.3d at 957.

The *Foley* court distinguished the prevailing wage law's "connection" to ERISA plans from the "equivalent" benefits law preempted in *Washington Board of Trade. Foley* explained that whereas the equivalent benefits requirement, and resulting legal right for employees, was "premised on the existence of ERISA plans," the Pennsylvania prevailing wage law "could be meaningfully applied" even "[i]n the absence of ERISA plans." 37 F.3d at 957. The court explained further:

"[T]hat statute [in *Washington Board of Trade*] referred only to the ERISA plan as the basis for the rights it accorded. But the listing of an ERISA plan benefit as an *example* of the factors to be calculated into a broader determination, such as a prevailing wage, is in and of itself inconsequential. We have held that '[w]here, as here, a reference to an ERISA plan can be excised without altering the legal effect of a statute in any way, we believe the reference should be regarded as without legal consequences for § 514(a) purposes.' " 37 F.3d at 957 n.17 (quoting *United Wire*, 995 F.2d at 1192).

Recently, the Eighth Circuit followed the reasoning of the Third Circuit's *Foley* opinion in an ERISA preemption challenge to the Minnesota Prevailing Wage Law. *Minn. Chapter of Assoc. Builders v. Dept. Labor*, 47 F.3d 975, 979-80 (8th Cir. 1995).

Finally, the First Circuit found in *Combined Mgt. v. Superintendent of Bur. of Ins.*, 22 F.3d 1 (1st Cir.), *cert. denied* 115 S. Ct. 350 (1994), that ERISA did not preempt a Maine law requiring employers to maintain a workers compensation plan administered separately from any multi-benefit ERISA-covered plan. Combined Management, Inc., (CMI) challenged the law, asserting a right under ERISA to continue providing workers compensation benefits through its multi-benefit ERISA plan. The First Circuit upheld the state law, reasoning, in part, as follows:

"Maine's law, while having an economic impact on CMI, does not have an economic impact on the IAEA Plan itself. Clearly, any law that increases a company's cost of doing business can be said to affect that business's ability to provide benefits under its welfare benefit plan. This is not the same, however, as imposing burdens on the welfare benefit plan, itself. The increased cost or administrative burdens imposed by the state law must have some connection to the covered ERISA plan before the preemption analysis can come into play."

The same reasoning applies to K.S.A. 44-511(a)(2)(E).

We do not read *Washington Board of Trade* as requiring preemption merely on the basis that a statute refers to ERISA benefits or plans. Each of the circuit courts in *Guidry, Foley, Minn. Chapter,* and *Combined Mgt.* carefully examined the actual effect of the challenged state law on any ERISA covered plans to decide whether preemption was required.

We agree with (1) the *Foley* court's suggestion that merely listing ERISA fringe benefits as one factor to be included in a broader calculation is "in and of itself inconsequential" for § 514(a) pur-

poses, and (2) the *Combined Mgt*. court's recognition that ERISA preemption does not arise merely because of a state law that increases a company's cost of doing business in a way that could be alleviated by ERISA preemption.

### Blue Cross

Six days after oral argument in the instant case, the United States Supreme Court filed *Blue Cross*, 115 S. Ct. 1671. A unanimous court, speaking through Justice Souter, reversed the trial court, (813 F. Supp. 996 [S.D.N.Y. 1993]), and the Court of Appeals, (14 F.3d 708, 718 [2d Cir. 1993]), holding that the New York statute in question was not preempted by ERISA.

The Court of Appeals in *Blue Cross*, in affirming the trial court's finding of ERISA preemption, relied on *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983), and *Washington Board of Trade*. The Court of Appeals reasoned that ERISA's preemption clause must be read broadly to reach any state law having a connection with, or reference to, covered benefit plans. See 115 S. Ct. at 1675-76. The Supreme Court disagreed. 115 S. Ct. at 1676.

The New York statute questioned in *Blue Cross* required hospitals to collect surcharges from patients covered by a commercial insurer but not from patients insured by a Blue Cross/Blue Shield plan. Blue Cross/Blue Shield, Medicaid, and HMO patients were billed at the hospital's Diagnosis Related Group (DRG) rate. Patients covered by commercial insurance plans were billed at the DRG rate plus a 13% surcharge to be retained by the hospital. Commercially insured patients were also billed an additional 11% surcharge to be turned over to the State. The Court of Appeals decided that the surcharges were meant to increase the costs of certain insurance and HMO health care and held that this purposeful interference with the choices that ERISA plans make for health care coverage constitutes a "connection with" ERISA plans, triggering preemption. 14 F.3d at 719.

The Supreme Court disagreed, holding that New York's surcharge provisions do not "relate to" employee benefit plans within

the meaning of § 514(a) and, thus, are not preempted. *Blue Cross* charts its course into the ERISA preemption seas, observing:

"[W]e have never assumed lightly that Congress has derogated state regulations, but instead have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law. [Citations omitted.] Indeed, in cases like this one, where federal law is said to bar state action in fields of traditional state regulation, [citation omitted] we have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" 115 S. Ct. at 1676.

As to the meaning of the phrases "relate to" and "connection with," *Blue Cross* instructs us to "go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." 115 S. Ct. at 1677. *Blue Cross* observes:

"Indeed, to read the pre-emption provision as displacing all state laws affecting costs and charges on the theory that they indirectly relate to ERISA plans that purchase insurance policies or HMO memberships that would cover such services, would effectively read the limiting language in § 514(a) out of the statute, a conclusion that would violate basic principles of statutory interpretation and could not be squared with our prior pronouncement that '[p]reemption does not occur . . . if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.'" 115 S. Ct. at 1679-80.

## CONCLUSION

We hold that the connection between K.S.A. 44-511(a)(2)(E) and LPC's ERISA plans is only "tenuous, remote, or peripheral." The provisions of K.S.A. 44-511(a)(2)(E) do not "relate to" the plans within the meaning of ERISA § 514(a). *Blue Cross* and the recent federal Circuit Court ERISA preemption decisions refer-

enced herein support our conclusion that K.S.A. 44-511(a)(2)(E) of the KWCA is not preempted by § 514(a) of ERISA.

Affirmed.

ABBOTT, J., not participating.

ROBERT H. MILLER, C.J., Retired, assigned█