**Theresa CIAMPI**

v.

**HANNAFORD BROS. CO.**

Supreme Judicial Court of Maine.

Argued June 13, 1996.

Decided July 26, 1996.

**6** ■

James J. MacAdam (orally), McTeague, Higbee, Macadam, Case, Watson & Cohen, Topsham, for Employee.

John F. Lambert, Jr. (orally) and Thomas W. Laprade, Black, Lambert, Coffin & Rudman, Portland, for Employer.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN and LIPEZ, JJ.

ROBERTS, Justice.

Hannaford Bros. Co. appeals from a decision of the Workers' Compensation Board awarding its employee Theresa Ciampi weekly benefits based on a computation of her average weekly wage that included fringe benefits pursuant to 39–A M.R.S.A. § 102(4)(H) (Supp.1995). Hannaford contends that section 102(4)(H) is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 832 (codified as amended at 29 U.S.C. §§ 1001–1461 (1990)). We conclude that section 102(4)(H) does not "relate to" an employee benefit plan within the meaning of ERISA's preemption provision, and therefore we affirm the decision of the Board.

The facts of this case are not in dispute. Ciampi suffered a work-related injury on January 30, 1993, while employed by Hannaford. Her fringe benefits were discontinued during the period of her disability. Ciampi filed a petition for an award seeking the inclusion of fringe benefits, valued at $62.50 per week, in her average weekly wage. Because the inclusion of the fringe benefits would not increase her weekly benefits above two-thirds of the state average weekly wage at the time of her injury, the Board granted the petition. 39–A M.R.S.A. § 102(4)(H); *Beaulieu v. Maine Medical Ctr.*, 675 A.2d 110, 111 (Me.1996). Concluding that it lacked jurisdiction to resolve issues of federal preemption, the Board declined to address Hannaford's argument that section 102(4)(H) is preempted by ERISA. We granted Hannaford's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1995).

ERISA was enacted in 1974 for the purpose of protecting the interests of employees and their beneficiaries in employer-provided benefit plans. The United States Supreme Court recently stated:

> [ERISA] does not go about protecting plan participants and their beneficiaries by requiring employers to provide any given set of minimum benefits, but instead controls the administration of benefit plans ... as by imposing reporting and disclosure mandaes, ... participation and vesting requirements, ... funding standards, ... and fiduciary responsibilities for plan administrators.... It envisions administrative oversight, imposes criminal sanctions, and establishes a comprehensive civil enforcement scheme.

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* —— U.S. ——, —— – ——, 115 S.Ct. 1671, 1674–75, 131 L.Ed.2d 695 (1995) (citations omitted). ERISA also contains a broad preemption provision for the purpose of insuring uniformity in the laws relating to employee benefit plans. 29 U.S.C. § 1144(a). As the Supreme Court has explained:

> An employer that makes a commitment systematically to pay certain benefits undertakes a host of obligations, such as determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements. The most efficient way to meet these responsibilities is to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits. Such a system is difficult to achieve, however, if a benefit plan is subject to differing regulatory requirements in differing States. A plan would be required to keep certain records in some States but not in others; to make certain benefits available in some States but not in others; to process claims in a certain way in some States but not in

others; and to comply with certain fiduciary standards in some States but not in others.

*Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987). In pertinent part, section 1144(a) provides that "[e]xcept as provided in subsection (b) of this section, the provisions of this title ... shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 4(a) and not exempt under section 4(b)." 29 U.S.C. § 1144(a) (emphasis added). Subsection 4(b) provides that "[t]he provisions of this title shall not apply to any employee benefit plan if ... (3) such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws." 29 U.S.C. § 1003(b)(3).

■ Hannaford contends that 39–A M.R.S.A. § 102(4)(H) "relates to" an ERISA benefit plan and is therefore preempted by ERISA.[1] Section 102(4)(H) provides:

H. "Average weekly wages, earnings or salary" does not include any fringe or other benefits paid by the employer that continue during the disability. Any fringe or other benefit paid by the employer that does not continue during the disability must be included for purposes of determining an employee's average weekly wage to the extent that the inclusion of the fringe or other benefit will not result in a weekly benefit amount that is greater than ⅔ of the state average weekly wage at the time of the injury.

The test for determining whether state legislation "relates to" an ERISA benefit plan is whether "in the normal sense of the phrase, ... it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Hannaford rests its argument primarily on the Supreme Court's recent decision in *District of Columbia v.*

*Greater Washington Bd. of Trade,* 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992). *Greater Washington* dealt with a District of Columbia statute that required employers who provide health insurance coverage to employees to continue that coverage during the period that those employees receive workers' compensation benefits. *Id.* at 128, 113 S.Ct. at 582–83. The District of Columbia statute provided in pertinent part:

(1) Any employer who provides health insurance coverage for an employee shall provide health insurance coverage equivalent to the existing health insurance coverage of the employee while the employee receives or is eligible to receive workers' compensation benefits under this act.

. . . .

(3) The provision of health insurance coverage shall not exceed 52 weeks and shall be at the same benefit level that the employee had at the time the employee received or was eligible to receive workers' compensation benefits.

*Greater Washington Bd. of Trade v. District of Columbia,* 948 F.2d 1317, 1319 (D.C.Cir. 1991), *aff'd sub. nom District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513. The Supreme Court stated in *Greater Washington* that because health insurance plans are regulated by ERISA, "any state law imposing requirements by reference to such covered programs must yield to ERISA." *Greater Washington,* 506 U.S. at 130–31, 113 S.Ct. at 584. The Court stated further that the District of Columbia statute "specifically refers to welfare benefit plans regulated by ERISA and on that basis alone is pre-empted." *Id.* at 130, 113 S.Ct. at 583.

Hannaford contends that, pursuant to *Greater Washington,* any express reference to an ERISA plan, regardless of the intent of the statute or its actual connection with an ERISA plan, requires a finding that the law "relates to" an ERISA plan. Hannaford contends further that because section 102(4)(H)

---

1. An "employee benefit plan" is defined as either a "welfare" or "pension" plan. Welfare plans are defined as providing medical, disability, death, accident, unemployment, or related benefits, while pension plans relate generally to retirement. 29 U.S.C. § 1002(1)–(3). There is no dispute that Hannaford's fringe benefit package qualifies as a welfare plan for purposes of ERISA.

increases the cost of providing ERISA benefits, creates administrative burdens in existing ERISA plans, and subjects employers to conflicting multistate laws, it has a "connection with" ERISA benefit plans and is therefore superseded by ERISA. *FMC Corp. v. Holliday*, 498 U.S. 52, 60, 111 S.Ct. 403, 408–09, 112 L.Ed.2d 356 (1990). We disagree.

■ Section 102(4)(H) is plainly distinguishable from the District of Columbia statute at issue in *Greater Washington*. That statute compelled employers to provide an ERISA-type benefit for employees receiving workers' compensation. Section 102(4)(H), by contrast, provides that the value of an employee fringe benefit plan must be considered in the calculation of an employee's average weekly wage for purposes of determining weekly workers' compensation benefits. Unlike the statute at issue in *Greater Washington*, section 102(4)(H) has only an indirect impact on ERISA-regulated benefit plans. In a recent case the Supreme Court stated, "[a]n indirect economic influence ... does not bind plan administrators to any particular choice and thus function as a regulation of an ERISA plan itself." *New York State Conf. of Blue Cross*, —— U.S. at ——, 115 S.Ct. at 1679. Maine employers are not compelled to provide or continue ERISA-type benefits to injured employees, nor are they required to modify their ERISA plans or maintain a separate administrative structure to comply with the Maine statute. *See Lawrence Paper Co. v. Gomez*, 257 Kan. 932, 897 P.2d 134, 143 (1995) (Kansas statute permitting inclusion of fringe benefits in employee's average weekly wage is not preempted by ERISA).

■ ERISA does not preempt state legislation that has a " 'tenuous, remote, or peripheral' " connection to ERISA benefit plans. *Greater Washington*, 506 U.S. at 130 n. 1, 113 S.Ct. at 583 n. 1 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 100, 103 S.Ct. at 2901). In *Blue Cross* the Supreme Court stated, "[i]f 'relate to' were taken to extend to the furthest stretch of its indeter-

minacy, then for all practical purposes preemption would never run its course, for '[r]eally, universally, relations stop nowhere.' " *New York State Conf. of Blue Cross*, —— U.S. at ——, 115 S.Ct. at 1677 (quoting H. James, Roderick Hudson xli (New York ed. World's Classics 1980)). Moreover, ERISA does not shield plan administrators from any and all possible economic influences that may arise from state laws or regulations. Many traditional areas of state regulation, such as the regulation of work-place conditions or the formulation of quality standards for hospital services, can affect the cost of an ERISA plan but are not superseded by ERISA because they have only an indirect effect on plan administration. *Id.* at ——, 115 S.Ct. at 1679. The issue, for purposes of preemption, is whether Congress intended to foreclose the states from exercising regulatory authority in a given area. *Id.* at ——, 115 S.Ct. at 1676. In cases "where federal law is said to bar state action in fields of traditional state regulation," such as workers' compensation legislation, there is an " 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest intent.' " *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

■ Maine is not alone in permitting the consideration of fringe benefits in an employee's pre-injury wage.[2] "[T]he purpose of calculating an average weekly wage is to arrive at an estimate of the 'employee's future earning capacity as fairly as possible.' " *Nielsen v. Burnham & Morrill, Inc.*, 600 A.2d 1111, 1112 (Me.1991) (quoting *Fowler v. First Nat'l Stores, Inc.*, 416 A.2d 1258, 1260 (Me.1980)). Statutes and judicial decisions that permit consideration of fringe benefits in the determination of an employee's pre-injury wage are premised on the practical reality that in some circumstances the money received in an employee's weekly pay envelope will not accurately reflect the employee's actual earning capacity. *Ex Parte Murray*, 490 So.2d 1238, 1240–41 (Ala.1986); *Ragland v. Morrison–*

---

2. *See, e.g.*, Ala Code § 25–5–1(6) (1992); Alaska Stat §§ 23.30.220, 265(15) (1990); Colo.Rev.Stat. § 8–70–101 (Supp.1995); Fla.Stat.Ann. § 440.02(24) (West Supp.1993); Kan.Stat.Ann § 44–511(a)(2) (1993); Mich.Comp Laws

§ 418.371(2) (1985); *Ebmer v. Wayne Village*, 197 Mich.App. 307, 494 N.W.2d 842, 844 (1992); 2 A. Larson, The Law of Workmen's Compensation § 60.12(b) (1993).

*Knudsen Co.*, 724 P.2d 519, 522–23 (Alaska 1986); *Murphy v. Ampex Corp.*, 703 P.2d 632, 633–34 (Colo.App.1985).

We are not persuaded that Congress, by its enactment of ERISA, intended to supersede state authority to calculate weekly workers' compensation benefits based on a fair estimate of an employee's earning capacity by including an employee's fringe benefits. Our conclusion is buttressed by Congress's express exemption of plans maintained solely for the purpose of complying with applicable state workers' compensation laws from the ERISA preemption provision. 29 U.S.C. §§ 1003(b)(3), 1144(a). Our result is also supported by decisions of the federal courts that states are not precluded from referring to ERISA benefits to calculate benefits for otherwise permissible purposes within the states' traditional authority. *See, e.g., Thiokol Corp., Morton Int'l, Inc. v. Roberts,* 76 F.3d 751, 755 (6th Cir.1996) (ERISA does not preempt Michigan tax based in part on employer payments to fringe benefit plans); *Keystone Chapter, Associated Builders & Contractors v. Foley,* 37 F.3d 945, 963 (3d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995) (ERISA does not preempt statute requiring public contractors to pay prevailing minimum wage calculated with reference to employer contributions to fringe benefit plans).

We reject Hannaford's argument that by excluding from the average weekly wage those fringe benefits that "continue during the disability" the Legislature intended a direct impact on ERISA plans by encouraging employers to continue fringe benefits during the course of an employee's disability. The legislative record is devoid of any reference to such an intent, and we do not find any evidence of that intent in the plain statutory language. Had the Legislature intended to encourage employers to continue benefits during the course of an employee's disability, it would have applied section 102(4)(H) across the board to all employees, as the District of Columbia had done with its statute in *Greater Washington,* and not merely to those employees whose weekly benefits are less than two-thirds of the state average weekly wage on the date of the injury.

We are not unmindful of the legislative history of this issue following our 1989 decision in *Ashby v. Rust Eng'g Co.,* 559 A.2d 774, 775 (Me.1989), in which we held that certain payments must be included in the average weekly wage when employee benefits are paid for by bargained-for, dollar-for-dollar deductions from an employee's pay. *Clark v. Rust Eng'g Co.,* 595 A.2d 416, 419 (Me.1991). *See also Fletcher v. Hanington Bros., Inc.,* 647 A.2d 800, 803 (Me.1994) (employee's voluntary deductions from weekly pay for health insurance must be included in average weekly wage). The Legislature's immediate response to *Ashby* was the enactment of P.L.1991, ch. 615, § A–20, which purported to overturn that decision and provided that fringe benefits may not be included in an employee's average weekly wage. 39 M.R.S.A. § 2(2)(G) (Supp.1991), *repealed and replaced by* Maine Workers' Compensation Act of 1992, P.L.1991, ch. 885, §§ A–7, A–8 (effective January 1, 1993); *Tompkins v. Wade & Searway Constr. Corp.,* 612 A.2d 874, 876 (Me.1992). In light of this recent history, it is likely that the Legislature intended section 102(4)(H) to strike a balance between the *Ashby* rule and the rule of former section 2(2)(G) by providing a slightly greater recovery to those employees with the lowest weekly benefits.

We conclude that section 102(4)(H) has only a "tenuous, remote, or peripheral" connection with benefit plans and is therefore not preempted by ERISA. *Greater Washington,* 506 U.S. at 130 n. 1, 113 S.Ct. at 583 n. 1 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. at 100, 103 S.Ct. at 2901). Moreover, our decision is in accord with a recent opinion of the Supreme Court of Kansas addressing a Kansas statute similar in all key respects to Maine's section 102(4)(H). *Lawrence Paper,* 897 P.2d at 143.

The entry is:

Decision of the Workers' Compensation Board affirmed.

All concurring.