Sharp v. Caterpillar 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00272-CV







John Sharp, Comptroller of Public Accounts for the State of Texas;


Dan Morales, Attorney General for the State of Texas; and 


Martha Whitehead, Treasurer of the State of Texas, Appellants



v.



Caterpillar, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 93-11176, HONORABLE PETER M. LOWRY, JUDGE PRESIDING








 Appellee Caterpillar, Inc. ("Caterpillar") sued appellants (collectively, "the Comptroller") (1)
in district court for a refund of franchise taxes paid under protest. The district court granted summary
judgment in favor of Caterpillar, and the Comptroller now appeals. We will reverse the district court's
judgment and remand the cause.



THE CONTROVERSY


 The issue at the heart of this appeal is whether Caterpillar must be allowed to deduct from
its franchise tax base an estimate of future liability for certain post-retirement employee benefits. Caterpillar
provides extensive benefits to its retired employees, including health and life insurance coverage, which are
the benefits at issue in this appeal. Caterpillar pays health and life insurance claims out of general revenue
as they are incurred; the benefits are not "funded" by a trust or other similarly dedicated asset. Though
Caterpillar's future liability for these benefits may be statistically predictable with reasonable accuracy, the
exact amount of payments for future years cannot be precisely determined in advance.

 For the 1988-1994 franchise-tax reporting years, the Comptroller did not allow Caterpillar
to deduct from its franchise tax base future liability for the benefits at issue. Caterpillar paid its franchise
tax under protest and, after exhausting its administrative remedies, filed suit in district court seeking a refund
of over $2,400,000. Caterpillar argued that the relevant provisions of the Tax Code should be interpreted
to allow a deduction for its future benefits liability. Alternatively, Caterpillar claimed that these provisions
are preempted by the federal Employee Retirement Income Security Act ("ERISA") (2) and violate the Texas
constitutional guarantee of equal and uniform taxation. Both parties moved for summary judgment. The
district court granted Caterpillar's motion for summary judgment and overruled the Comptroller's motion. 
The Comptroller now appeals.



FRANCHISE TAX BACKGROUND


 The franchise tax is imposed on corporations for the privilege of doing business in Texas. 
See Tex. Tax Code Ann. § 171.001(a)(1) (West 1992). A corporation's franchise tax base is determined,
in part, by applying a specified tax rate to the corporation's net taxable capital. Id. § 171.002(b)(1). A
corporation's net taxable capital is equal to its stated capital plus its surplus, minus any deductions allowed
by the Tax Code. Id. § 171.101(a). At issue in this appeal is the surplus component of net taxable capital.

 Before 1987, the Tax Code did not define surplus. In 1987, the legislature added section
171.109 to the Tax Code to provide a general definition of surplus. Act of June 1, 1987, 70th Leg., R.S.,
ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1734-35 (Tex. Tax Code Ann. § 171.109(a), since amended). (3) 
Both parties agree that the legislature added the definition of surplus to overturn this Court's holdings in
State v. Sun Refining & Marketing., Inc., 740 S.W.2d 552 (Tex. App.--Austin 1987, writ denied), and
State v. Sun Oil Co. (Delaware), 740 S.W.2d 556 (Tex. App.--Austin 1987, no writ) ("the Sun
cases"). (4) In the Sun cases, we held that taxpayers could exclude from surplus reasonable estimates of
contingent liabilities, such as self-insurance accounts, bad debt accounts, deferred employee benefits
accounts, and various other liabilities connected with the oil and gas industry. The 1987 Act defined surplus
as net assets minus stated capital; net assets were, in turn, defined as total assets minus total debts. Id.
§ 171.109(a)(1)-(2). To effectively overturn the Sun cases, the legislature also provided that surplus
specifically includes "unrealized, estimated, or contingent losses or obligations . . . ." Id. § 171.109(a)(1).

 In 1991, the legislature added subsection 171.109(j), which provides that a corporation
may not exclude from surplus liabilities for employee benefits "that are not payable in the current accounting
year, including retirement, medical, insurance, post-retirement, and other similar benefits . . . ." Id. §
171.109(j)(1). (5) The legislature specifically noted that it intended subsection (j)(1) to be considered as a
clarification of the existing law, not as a substantive change. Act of August 13, 1991, 72d Leg., 1st C.S.,
ch. 5, § 8.081, 1991 Tex Gen. Laws 134, 159. Apparently, then, the legislature added subsection (j) to
clarify how the general definition of surplus in subsection (a)(1) of the 1987 Act should be applied in the
context of estimated employee benefits.



DISCUSSION


 In district court, both parties moved for summary judgment. The district court granted
Caterpillar's motion, which contained the three independent grounds previously set forth. The district court
also denied the Comptroller's motion for summary judgment, which was based on the asserted ground that
Caterpillar's liability is estimated and therefore must be included as a part of surplus as a matter of law. 
Points of error one, three, four, and five complain of the trial court's granting summary judgment for
Caterpillar. Points of error two through five complain of the trial court's failure to grant summary judgment
for the Comptroller.

 Because the district court granted summary judgment in a general order, we must affirm
the judgment if it is supported by any of the three legal grounds presented in Caterpillar's motion. See State
Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993); Rogers v. Ricane Enters., Inc., 772
S.W.2d 76, 79 (Tex. 1989). We review de novo the district court's determination that Caterpillar was
entitled to judgment as a matter of law. Capitan Enters., Inc. v. Jackson, 903 S.W.2d 772, 775 (Tex.
App.--El Paso 1994, writ denied).



(i) Statutory Interpretation

 The Comptroller argues that the district court erred because the Tax Code does not permit
Caterpillar to deduct from surplus its future liability for the employee benefits at issue. Caterpillar's
argument implicates two provisions of the Tax Code: (1) section 171.109(a)(3), which defines "debt" as
"any legally enforceable obligation measured in a certain amount of money which must be performed or
paid within an ascertainable period of time or on demand" (emphasis added), and (2) section
171.109(a)(1), which provides that "surplus" includes "unrealized, estimated, or contingent losses or
obligations." See Tex. Tax Code Ann. § 171.109(a)(1), (3) (West 1992). The Comptroller argues that
Caterpillar's liability does not meet the definition of "debt" and therefore falls within the category of
estimated liabilities that must be included in surplus. Caterpillar argues that its future benefits liability may
be statistically calculated with a relatively high degree of accuracy and therefore qualifies as debt and not
an "estimated" liability. We find Caterpillar's argument to be unpersuasive.

 The Comptroller's position is clearly supported both by the plain language of the statute and
the legislature's apparent intent in enacting it. Caterpillar concedes that its future liability for the benefits at
issue cannot be precisely determined in advance for any given individual and that any prediction of its
liability in the aggregate depends upon assumptions that may or may not prove to be true. Caterpillar
argues, however, that sophisticated actuarial methods produce reasonably accurate figures for its liability,
providing sufficient certainty under the Tax Code to allow deduction of the liability from surplus. The
statute makes clear, however, that a liability may not be deducted from surplus unless it can be exactly
determined, no matter how accurately it may be estimated.

 Caterpillar's liability cannot qualify as debt because it is not a "certain amount of money." 
Id. § 171.109(a)(3) (emphasis added). Caterpillar's liability must, of necessity, be forecast; it cannot be
determined precisely in advance, even in the aggregate. "Certain" is defined as fixed, exact, or precise. 
Webster's Third New International Dictionary 367 (Philip B. Gove ed., 1986). Caterpillar's future
liability is not fixed, exact, or precise, but instead is an actuarial forecast. Because the liability is not a sum
certain, it does not fall within the statutory definition of "debt," which may be deducted from surplus. 
Caterpillar's liability is, on the contrary, estimated. An estimate is a rough or approximate calculation, or
a judgment made from incomplete data. Id. at 779. The eventual accuracy of a prediction does not change
its character as being presently uncertain. The plain meaning of "estimate" precisely describes Caterpillar's
statistical forecast of its liability. No matter how accurate, Caterpillar's calculation depends upon
assumptions and is therefore an approximation, derived mathematically from the available data. 
Accordingly, the Tax Code requires that Caterpillar's estimated liability be included in its surplus. See Tex.
Tax Code Ann. § 171.109(a)(1) (West 1992).

 Our analysis is further supported by the statute's legislative history. See Code Construction
Act, Tex. Gov't Code Ann. §§ 311.023(3), 312.005 (West 1988). Section 171.109(a)(1) was intended
to overturn our Sun cases. In the Sun cases, we held that liabilities could be excluded from surplus, if they
were reasonably estimated, in order to reflect the true financial condition of the taxpayer. Sun Ref. &
Mktg., 740 S.W.2d at 555. We may therefore infer that the legislature, in passing section 171.109(a),
intended to include in surplus all estimates of future liability, even reasonably accurate ones. Caterpillar's
liability is just this type of reasonable estimate. If we adopted Caterpillar's argument, we would return to
our Sun holding in flagrant disregard of the legislature's evident intent to the contrary.



(ii) ERISA Preemption

 The Comptroller next argues that the district court erred in holding that ERISA preempts
the relevant provisions of the Tax Code. ERISA provides uniform and comprehensive federal regulation
of employee benefit plans. ERISA protects employees' interests in their benefit plans and promotes
efficiency by making regulation of benefits plans an exclusively federal concern. ERISA subjects employee
benefit plans to participation, funding, and vesting requirements, and provides uniform standards for
reporting, disclosure, and fiduciary responsibility. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90-91
(1983).

 To promote the goal of uniform and exclusive federal regulation, section 514(a) of ERISA
expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee
benefit plan . . . ." 29 U.S.C. § 1144(a) (1994) (emphasis added); see Alessi v. Raybestos-Manhattan,
Inc., 451 U.S. 504, 523 (1981). Both parties agree that Caterpillar provides its post-retirement benefits
pursuant to a plan covered by ERISA, and the Tax Code clearly qualifies as an applicable state law. 
Therefore the issue in this appeal, as in most ERISA-preemption cases, is whether the applicable state law
"relates to" employee benefit plans. Because ERISA is a federal statute, we are bound by the precedents
of the United States Supreme Court and give strong consideration to opinions of the federal appellate
courts as persuasive authority. Ex parte Twedell, 309 S.W.2d 834, 844 (Tex. 1958); Barstow v. State,
742 S.W.2d 495, 501 n.2 (Tex. App.--Austin 1987, writ denied); Olson v. Holmes, 571 S.W.2d 211,
213 (Tex. Civ. App.--Austin 1978), writ ref'd n.r.e. per curiam, 587 S.W.2d 678 (Tex. 1979).

 The United States Supreme Court has established an analytical framework for ERISA
preemption, holding that a state law "relates to" a benefit plan covered by ERISA "if it has a connection
with or reference to such a plan." Shaw, 463 U.S at 97 (emphasis added). Although ERISA preemption
is broad, it is not unlimited: a state law will not be preempted if it has only a "tenuous, remote, or peripheral"
connection with plans covered by ERISA. New York State Conference of Blue Cross & Blue Shield
Plans v. Travelers Ins. Co., 115 S. Ct. 1671, 1680 (1995); District of Columbia v. Greater
Washington Bd. of Trade, 506 U.S. 125, 130 n.1 (1992); Shaw, 463 U.S. at 100 n.21. Although it is
not difficult to discern whether a law refers to plans covered by ERISA, determining whether a law has
a sufficiently significant connection with ERISA plans to warrant preemption has proved to be a thorny
problem. Neither statute at issue in this appeal makes reference to ERISA plans; (6) therefore, we must
determine whether either statute has a sufficient connection with ERISA plans to warrant preemption.

 The federal courts have developed a two-tiered method for analyzing ERISA "connection"
preemption. See Kevin Matz, Note, ERISA's Preemption of State Tax Laws, 61 Fordham L. Rev. 401,
416-17 (1992). On the first tier are two bright-line tests: the state law is preempted if it conflicts with
ERISA's substantive provisions or if the state legislature specifically targeted the law to affect ERISA plans. 
See, e.g., FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990); Mackey v. Lanier Collections Agency, 486
U.S. 825, 829, 838 n.12 (1988); Alessi, 451 U.S. at 524-25; Keystone Chapter, Associated Builders
& Contractors, Inc. v. Foley, 37 F.3d 945, 955 (3d Cir. 1994), cert. denied, 131 L. Ed. 2d 244 (1995);
Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 146 (2d Cir. 1989); see also Thiokol Corp. v. Roberts,
76 F.3d 751, 758-59 (6th Cir. 1996); E-Systems, Inc. v. Pogue, 929 F.2d 1100, 1102-03 (5th Cir.
1991). If a law survives the first-tier test, the federal courts proceed to a second tier of analysis to
determine whether the law is nevertheless preempted because it has a substantial indirect effect on ERISA
plans. See Travelers, 115 S. Ct. at 1677-1680; Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139
(1990); Matz, 61 Fordham L. Rev. at 417. Unlike the first tier's bright-line rules, the second tier consists
of a balancing test employing various factors. Compare Foley, 37 F.3d at 955 with Arkansas Blue Cross
& Blue Shield v. St. Mary's Hosp., Inc., 947 F.2d 1341, 1344-45 (8th Cir. 1991), cert. denied, 119 L.
Ed. 2d 227 (1992) and Borges, 869 F.2d at 146 and Firestone Tire & Rubber Co. v. Neusser, 810
F.2d 550, 555-56 (6th Cir. 1987). The Supreme Court's recent Travelers opinion gives courts guidance
in the second-tier preemption analysis, but its exact contours remain somewhat vague. See Travelers, 115
S. Ct. at 1677-1680.

 Caterpillar argues section 171.109(j) of the Tax Code is preempted by ERISA. We need
not decide this question, however, because preemption of section 171.109(j) would not dispose of this
appeal. Subsection (j)'s specific injunction concerning estimated employee benefit liabilities simply clarifies
one particular application of the general rule contained in section 171.109(a)(1). Section 171.109(a)(1),
standing alone, provides that all "unrealized, estimated, or contingent losses or obligations" must be included
in a corporation's surplus. Tex. Tax Code Ann. § 171.109(a)(1) (West 1992). As we have previously
discussed, one type of liability covered by this broad category is Caterpillar's estimated liability for the post-retirement benefits at issue here. Therefore, even if section 171.109(j) is preempted by ERISA,
Caterpillar's liabilities would still be included in surplus under the rule of section 171.109(a)(1). 
Accordingly, we will assume, without deciding, that ERISA preempts section 171.109(j) and proceed to
consider whether ERISA preempts section 171.109(a)(1).

 Section 171.109(a)(1) of the Tax Code does not run afoul of first-tier "connection"
preemption. The statute clearly does not conflict with ERISA's substantive provisions; ERISA does not
impose any form of tax and does not address state tax treatment of covered plans. Nor was section
171.109(a)(1) specifically targeted at ERISA plans. The statute was intended to be generally applicable
to all types of contingent and estimated liabilities. It appears that the general purpose of the statute was to
overturn the Sun cases; that fact does not, however, indicate that the statute was specifically targeted at
ERISA plan benefits. ERISA benefits were only one of several different types of contingent and estimated
liabilities addressed in the Sun cases. See Sun Ref. & Mktg., 740 S.W.2d at 553-56; Sun Oil Co.
(Delaware), 740 S.W.2d at 557-58. Indeed, the Sun cases primarily addressed various types of
contingent liabilities incurred in the oil and gas industry. See Sun Ref. & Mktg., 740 S.W.2d at 553-56;
Sun Oil Co. (Delaware), 740 S.W.2d at 557-58. We conclude that Tax Code section 171.109(a)(1)
is a generally applicable statute that catches ERISA plans in its broad sweep; therefore, the statute was not
specifically targeted at ERISA benefits and is not subject to first-tier preemption.

 Next, we must determine whether the statute is nevertheless subject to second-tier
preemption due to its indirect effect on ERISA plans. Although the United States Supreme Court has never
considered ERISA's preemptive effect on a generally applicable state tax law, the Court's recent opinion
in Travelers indicates that second-tier preemption is disfavored and, accordingly, generally applicable state
laws will not be preempted simply because they have the indirect effect of raising the cost to operate an
ERISA plan. See Travelers, 115 S. Ct. at 1680-81. In Travelers, the Court considered a New York
statute that imposed on certain providers of medical care, as part of a general health-care regulation
scheme, a surcharge that would be used to subsidize Blue Cross and Blue Shield. Travelers argued that
the statute was preempted by ERISA because the surcharge would raise costs for ERISA insurance plans
purchasing medical coverage from the affected providers. After quickly noting that the statute did not fall
afoul of any first-tier preemption test, the Court discussed at length the issue of second-tier preemption.

 In framing its analysis, the Court noted that second-tier preemption must be guided by
ERISA's objective of preventing a multiplicity of inconsistent state regulations that would jeopardize the
uniform administration of employee benefit plans. Id. at 1677-78. The Court held that the New York
statute was not preempted, because it simply raised the cost of medical care to some plans and did not
threaten the uniform interstate administration of ERISA plans:



Nor does the indirect influence of the surcharges preclude . . . the provision of a uniform
interstate benefit package if a plan wishes to provide one. It simply bears on the costs of
benefits and the relative costs of competing insurance to provide them.



Id. at 1679. The Court held that a mere increase of cost to ERISA plans would not warrant preemption,
because a contrary holding would lead to the absurd result of preempting all of the many state laws that
impose indirect costs by requiring safety standards, quality standards, and so on. Id. at 1679-80. 
Accordingly, the Court held that the statute was not preempted, because it had "only a tenuous, remote,
or peripheral connection with covered plans, as is the case with many laws of general applicability." Id.
at 1680 (quoting Greater Washington Bd. of Trade, 506 U.S at 130 n.1).

 The Court in Travelers followed a clear trend in the federal circuits to disfavor second-tier
preemption and uphold generally applicable state laws that affect ERISA plans only by indirectly increasing
their costs of operation. In a seminal decision, the Second Circuit had earlier held that general state laws
increasing regulatory costs do not threaten the uniform administration of ERISA plans, and ERISA
preemption of such laws would give plans a special status never intended by Congress:



A preemption provision designed to prevent state interference with federal control of
ERISA plans does not require the creation of a fully insulated legal world that excludes
these plans from regulation of any purely local transaction.


 . . . .


In short, if ERISA is held to invalidate every State action that may increase the cost of
operating employee benefit plans, those plans will be permitted a charmed existence that
never was contemplated by Congress. Where, as here, a State statute of general
application does not affect the structure, the administration, or the type of benefits provided
in an ERISA plan, the mere fact that the statute has some economic impact on the plan
does not require that the statute be invalidated.



Rebaldo v. Cuomo, 749 F.2d 133, 139 (2d Cir. 1984) (footnote omitted). Every federal circuit that has
considered such a generally applicable state law has followed the same or similar reasoning and held that
ERISA does not preempt the law. See, e.g., Thiokol Corp. v. Roberts, 76 F.3d 751, 762 (6th Cir. 1996)
(state value-added tax); Boyle v. Anderson, 68 F.3d 1093, 1110 (8th Cir. 1995) (state health-care
provider tax); Minnesota Chapter of Assoc. Builders & Contractors, Inc. v. Minnesota Dep't of Labor
& Indus., 47 F.3d 975, 979-80 (8th Cir. 1995) (state prevailing wage law); Combined Management,
Inc. v. Superintendent of Bureau of Ins., 22 F.3d 1, 7 (1st Cir.), cert. denied, 115 S. Ct. 350 (1994)
(state statute requiring that worker's compensation plans be kept separate from ERISA plans); Keystone
Chapter, Associated Builders & Contractors, Inc. v. Foley, 37 F.3d 945, 963 (3d Cir. 1994), cert.
denied, 131 L. Ed. 2d 244 (1995) (state prevailing wage law); United Wire, Metal & Machine Health
& Welfare Fund v. Morristown Memorial Hosp., 995 F.2d 1179, 1195 (3d Cir.), cert. denied, 126 L.
Ed. 2d 332 (1993) (state statute setting rates for health-care providers); Aetna Life Ins. Co v. Borges,
869 F.2d 142, 149 (2nd Cir. 1989) (state escheat law); Firestone Tire & Rubber Co. v. Neusser, 810
F.2d 550, 556 (6th Cir. 1987) (municipal income tax); see also McDonald v. Houston Brokerage, Inc.,
No. 13-94-536-CV, slip op. at 12 (Tex. App.--Corpus Christi July 11, 1996, no writ h.).

 The Sixth Circuit has twice specifically held that ERISA does not preempt generally
applicable state taxes. Thiokol, 76 F.3d at 762; Neusser, 810 F.2d at 556. In Neusser, the court
considered a two-percent municipal income tax. After dispensing with first-tier preemption, the court
quoted Rebaldo and held that the same reasoning applied to the municipal tax, making its effect on ERISA
plans incidental only: "We hold only that where, as here, a municipality enacts a neutral income tax of
general application which applies to employees without regard to their status as ERISA participants, that
tax is not preempted by ERISA." Neusser, 810 F.2d at 556. More recently, the Sixth Circuit considered
Michigan's state value-added tax ("VAT") in Thiokol. Thiokol argued that ERISA preempted the portion
of the statute that required taxpayers to include all employee compensation, including employee benefits,
as part of the VAT base. The court, citing Neusser and Travelers, disagreed and held that the Michigan
statute was not preempted, because it was a generally applicable law that had only a peripheral effect on
ERISA plans:



[T]he Supreme Court does not require that state laws have absolutely zero effect on
ERISA plans, for this likely would be impossible as a matter of logic or practicality. State
property, contract, and tort law all surely have some effect on ERISA plans, but they are
not preempted. . . . [S]tate laws of general applicability can have effects on ERISA plans
and still escape pre-emption.



Thiokol, 76 F.3d at 755.

 The only opinion that could arguably support preemption in this case is Morgan Guaranty
Trust Co. v. Tax Appeals Tribunal, 599 N.E.2d 656 (N.Y. 1992). In Morgan Guaranty, the New
York Court of Appeals considered a ten percent state tax on the profit of any real estate transaction in
which the total consideration exceeded one million dollars. Morgan Guaranty, which paid the tax for
property it sold as trustee of an ERISA plan, argued that ERISA preempted the tax, and the court agreed. 
The court reasoned that, although the tax did not run afoul of any first-tier preemption factors, it was
preempted under a second-tier analysis due to its indirect effect on ERISA plans. Id. at 657-60. First,
the court noted that the tax would subject plans to the administrative burden of additional record keeping
and reporting requirements to comply with the tax. Second, and more important, the court noted that the
tax would affect a plan's investment strategy by altering economic incentives for the sale of real estate. 
Significantly, the court noted that the tax was not simply "a `cost of doing business' law, . . . but a tax
applied directly to the income derived from appreciation of a Plan asset." Id. at 660. The court
distinguished Neusser, reasoning that the municipal tax in that case was simply a "cost of doing business
law," whereas the New York tax directly depleted plan assets by taxing their profits. Id. at 661.

 Morgan Guaranty is not persuasive authority in this appeal. First, the court explicitly
distinguished the New York tax from a generally applicable "cost of doing business" tax such as that in
Neusser. The franchise tax in the present case falls in the same category as the tax in Neusser, because
it does not directly tax plan profits, but simply increases plans' costs of doing business. Second, the
Supreme Court in Travelers explicitly rejected the core reasoning used by the New York court, holding
instead that a change in economic incentive that merely affects a plan's "shopping decisions" does not
warrant preemption. Travelers, 115 S. Ct. at 1679. The Supreme Court also explicitly held that indirect
increases in administrative costs, such as the paperwork and disclosure requirements in Morgan Guaranty,
do not warrant preemption. Id. at 1679-80. Accordingly, we conclude that Morgan Guaranty cannot
be used to support preemption in this case.

 Caterpillar also argues that the Fifth Circuit's opinion in E-Systems, Inc. v. Pogue, 929
F.2d 1100 (5th Cir. 1991), supports preemption in this case. In E-Systems, the Fifth Circuit considered
and held preempted a Texas tax explicitly targeted at, and intended to specifically affect, ERISA plan
assets. E-Systems, 929 F.2d at 1101-02. Thus, first-tier preemption was warranted in E-Systems, and
a second-tier preemption analysis was unnecessary. Caterpillar argues that the Fifth Circuit's reasoning
indicates that any tax must be preempted if it has an economic impact on ERISA plans. See id. at 1103. 
We disagree. First, we believe that this argument is misplaced, because the court was responding to the
State's argument that economic impact alone, in the context of a tax targeted at ERISA plans, cannot
warrant preemption. Id. Second, we think Caterpillar's argument proves too much, because it would
require preemption of the many state laws and regulations that indirectly raise costs of ERISA plans. 
Again, such reasoning has been rejected by the Supreme Court in Travelers and by every federal circuit
court of appeals that has addressed the issue. See, e.g., Travelers, 115 S. Ct. at 1679.

 We hold that ERISA does not preempt section 171.109(a)(1) of the Texas Tax Code. 
The statute is part of a generally applicable tax scheme that incidentally raises the costs of doing business
for some ERISA plans; therefore, the statute's connection to ERISA plans is too tenuous, remote, and
ephemeral to warrant preemption. Our conclusion is supported by the Supreme Court's most recent
opinion on the subject and by a consensus in the federal appellate courts. We also draw support from the
Supreme Court's well-settled presumption against preemption unless clearly intended by Congress: "[W]e
have worked on the `assumption that the historic police powers of the States were not to be superseded
by the Federal Act unless that was the clear and manifest purpose of Congress.'" Travelers, 115 S. Ct.
at 1676 (citations omitted) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). 
Congress intended, in drafting ERISA's preemption clause, primarily to prevent conflicting regulations that
would inhibit the uniform administration of employee benefit plans. Travelers, 115 S. Ct. at 1677-78. We
cannot say that Congress clearly and manifestly intended to preempt indirect increases in the costs of
ERISA plan operations caused by a state's traditional power to tax corporations for the privilege of doing
business.



(iii) Equal and Uniform Taxation

 Finally, the Comptroller argues that the district court erred in holding that Tax Code section
171.109 violates the Texas constitutional requirement that all taxation be "equal and uniform." See Tex.
Const. art. VIII, § 1(a). Caterpillar responds that the statute is constitutionally infirm both on its face and
as applied by the Comptroller in this particular cause.

 Caterpillar argues that the statute is unconstitutional on its face because it allows taxpayers
to deduct certain estimated accounts from surplus notwithstanding the general rule of inclusion contained
in section 171.109(a)(1):



(i) The following accounts may also be excluded from surplus . . . :


 (1) a reserve or allowance for uncollectable accounts; and


 (2) a contra-asset account for depletion, depreciation, or amortization.



Tex. Tax Code Ann. § 171.109(i) (West 1992). Caterpillar contends that section 171.109 is
unconstitutional because there is no rational basis for allowing the accounts listed in subsection (i) to be
deducted from surplus, but not allowing a deduction for the post-retirement benefits at issue in this appeal. 
We will uphold a tax classification unless it has no rational basis. Hurt v. Cooper, 110 S.W.2d 896, 901
(Tex. 1937). When reviewing statutes relating to taxation, we indulge a strong presumption of constitutional
validity. Vinson v. Burgess, 773 S.W.2d 263, 266 (Tex. 1989).

 We reject Caterpillar's argument for two reasons. First, we believe that a rational basis
exists for distinguishing between the accounts made deductible by subsection (i) and the employee benefits
at issue in this appeal. In each case under subsection (i), the taxpayer has an existing asset the value of
which is being adjusted downward to reflect its true value due to depreciation, depletion, amortization, or
uncollectible debt. Thus, the deductions in subsection (i) are necessary to reflect the true, current value of
a presently owned asset. Caterpillar's liability, on the other hand, will occur in the future and does not relate
to the value of a presently held asset; although Caterpillar's post-retirement benefits will, at some point in
the future, reduce the amount of general revenue, they are not tied to a specific asset presently held by
Caterpillar. Therefore, Caterpillar is able to presently use the general revenue for other purposes until the
liability becomes due in the future, whereas the "contra-asset" accounts enumerated in subsection (i) reflect
money not available for present use by the taxpayer. This Court has previously noted that such a distinction
is a reasonable one for fashioning tax policy. See State v. Shell Oil Co., 747 S.W.2d 54, 56 (Tex.
App.--Austin 1988, no writ). We therefore conclude that the legislature had a rational basis for
distinguishing between the accounts listed in subsection (i) and Caterpillar's future employee benefit liability.

 Second, Caterpillar's claim fails as a matter of law because section 171.109 treats all
taxpayers in the same manner. Every franchise taxpayer is allowed to deduct the accounts listed in
subsection (i), but not other estimated obligations. The constitutional mandate of equal and uniform taxation
requires only "that all persons falling within the same class must be taxed alike." See Hurt, 110 S.W.2d
at 901. The thrust of Caterpillar's argument, however, is that there is no reason to allow some deductions
but not others, even though all taxpayers are subject to the same tax and the same deductions. This is a
matter of policy for determination by the legislature and does not warrant intervention under the banner of
the equal and uniform taxation provision of the Texas Constitution. (7)

 Caterpillar next argues that section 171.109 is unconstitutional as applied in this case
because the Comptroller allowed taxpayers to deduct estimated liability for unfunded pension benefits
between 1989 and 1991. (8) Caterpillar reasons that unfunded pension benefit liability is so similar to the life
and health insurance liabilities at issue in this appeal that there was no rational basis for the Comptroller to
allow deductions for the one but not the other during the three years at issue. We reject Caterpillar's
argument under the same reasoning that applies to Caterpillar's facial challenge: all taxpayers were taxed
in the same way. Caterpillar does not argue that the Comptroller treated one group of taxpayers differently
from another, similar group; instead, it takes issue with the Comptroller's treatment of all taxpayers for the
period of time in question. Therefore, Caterpillar's claim is not cognizable under the Texas constitutional
guarantee of equal and uniform taxation. Moreover, even if we were to construe Caterpillar's argument
as a cognizable constitutional claim, Caterpillar has failed to carry its burden of proof. To succeed in its
claim, Caterpillar would have to show that the Comptroller's different treatment of deductions was
tantamount to different treatment of taxpayers. In other words, Caterpillar would have to offer proof that,
as applied to a large number of taxpayers, the liability classification actually resulted in discrimination
between similarly situated taxpayers. See Southern Clay Prods., Inc. v. Bullock, 753 S.W.2d 781, 784
(Tex. App.--Austin 1988, no writ). Caterpillar failed to offer any summary-judgment proof that this
actually happened to a large group of taxpayers, and therefore Caterpillar was not entitled to summary
judgment on this issue.

 Finally, Caterpillar argues that section 171.109 is unconstitutional as applied because the
Comptroller allowed some taxpayers to deduct from surplus the benefits at issue in this appeal based solely
on their accounting method, in violation of this Court's holding in Bullock v. Sage Energy Co., 728
S.W.2d 465 (Tex. App.--Austin 1987, writ ref'd n.r.e.). Caterpillar alleges that, between 1988 and 1991,
the Comptroller allowed taxpayers to deduct estimated liability for life and health insurance benefits if they
"booked" the liability by reporting it on their balance sheet, but not if they kept the liability "unbooked" and
reported it in a footnote to their balance sheet. Caterpillar has failed, however, to satisfy its burden of proof
on this claim. As with its previous challenge to the statute as applied, Caterpillar had the burden to prove
that this practice was actually followed for a large number of taxpayers. See Southern Clay Prods., 753
S.W.2d at 784. Caterpillar has failed to offer summary-judgment proof that this was actually done with
any taxpayer. Therefore, Caterpillar was not entitled to summary judgment on that claim. We sustain point
of error one; to the extent they assert error in granting Caterpillar's motion for summary judgment, we also
sustain points of error three, four, and five. In point of error two, the Comptroller asserts that the trial
court erred in failing to grant his own motion for summary judgment. The Comptroller failed, however, to
conclusively prove the proposition that the statute was not applied to a large group of taxpayers in the
manner alleged by Caterpillar. Accordingly, this claim presents a disputed issue of fact that precludes the
rendition of summary judgment in favor of the Comptroller. We overrule point of error two; to the extent
they assert error in failing to grant the Comptroller's motion for summary judgment, we also overrule points
of error three, four, and five.



CONCLUSION


 The district court's summary judgment awarding Caterpillar a franchise tax refund is not
supported by any of the three legal grounds asserted in Caterpillar's motion and therefore must be reversed. 
However, we cannot render judgment in favor of the Comptroller because there is a disputed issue of fact
concerning Caterpillar's claim that the franchise tax was unconstitutional as applied in this case. Therefore,
we sustain the Comptroller's first point of error, reverse the trial court's judgment, and remand the cause
to the district court for further proceedings consistent with this opinion.



 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and B. A. Smith

Reversed and Remanded

Filed: September 18, 1996

Publish

1.   Appellants are John Sharp, Comptroller of Public Accounts for the State of Texas; Dan
Morales, Attorney General for the State of Texas; and Martha Whitehead, Treasurer of the
State of Texas.
2.   29 U.S.C. §§ 1001-1461 (1994).
3.   The legislature amended section 171.109(a) in 1991, and that amendment applies to
Caterpillar's 1992-1994 franchise tax reporting years. Act of August 13, 1991, 72d Leg., 1st
C.S., ch. 5, § 8.08, 1991 Tex Gen. Laws 158, 159. Because the amendment did not substantively
change the statute, we cite the current code for convenience.
4.   See Tex. S.B. 1170, Second and Third Reading on the Floor of the Senate, 70th Leg., R.S. (May
18, 1987) (amendment by Senator Jones); Tex. S.B. 1170, Hearing Before the House Committee on
Ways and Means, 70th Leg., R.S. (remarks of Committee Chair and Mr. Bill Allaway).
5.   Subsection (j) was amended in 1993, and the amendment applies to Caterpillar's 1994
reporting year. Act of May 27, 1993, 73d Leg., R.S., ch. 546, § 6, 1993 Tex Gen. Laws 2043,
2044 (Tex. Tax Code Ann. § 171.109(j) (West Supp. 1996)). Because the amendment made no
substantive change for purposes of this appeal, we will cite to the former version of subsection (j) as it
appears in the 1992 main volume of the Tax Code.
6.   Although Tax Code section 171.109(j) makes explicit reference to employee benefits that
may be provided by ERISA plans, the Supreme Court has specifically held that a reference to benefits
but not plans does not suffice to invoke "reference" preemption. Fort Halifax Packing Co. v. Coyne,
482 U.S. 1, 7 (1987).
7.   Furthermore, it seems that Caterpillar might not prevail even if the statute were found to
be unconstitutional on its face. The Comptroller argues that the remedy would be to declare
only the exceptions unconstitutional and sever them from the statute, thereby requiring
universal application of the taxing rule without the improper deductions. See Code Construction
Act, Tex. Gov't Code Ann. §§ 311.032(c), 312.013(a) (West 1988) (invalid portions of statutes may
be severed and valid portions applied). Although no Texas authority has squarely addressed the issue,
a number of jurisdictions have held that the remedy for an invalid tax exemption is to invalidate only the
exemption and apply the general rule of taxation. See Associated Grocers, Inc. v. State, 787 P.2d
22, 26 (Wash. 1990); Department of Revenue v. Magazine Publishers of Am., Inc., 604 So.2d
459, 463-64 (Fla. 1992); Thayer v. South Carolina Tax Comm'n, 413 S.E.2d 810, 815 (S.C.
1992). But see Dow Jones & Co. v. Tax Comm'n, 787 P.2d 843, 847 (Okla. 1990); McGraw-Hill
v. State Tax Comm'n, 552 N.E.2d 163, 164 (N.Y. 1990).
8.   The Comptroller concedes that these deductions were erroneous, because they were not
authorized under section 171.109. The deductibility of pension benefits, however, is not at
issue in this appeal; Caterpillar simply argues that it was unconstitutional for the Comptroller
to deviate from the statute only with regard to pension benefits and not also with regard to the
benefits at issue in this appeal.


>
CONCLUSION


 The district court's summary judgment awarding Caterpillar a franchise tax refund is not
supported by any of the three legal grounds asserted in Caterpillar's motion and therefore must be reversed. 
However, we cannot render judgment in favor of the Comptroller because there is a disputed issue of fact
concerning Caterpillar's claim that the franchise tax was unconstitutional as applied in this case. Therefore,
we sustain the Comptroller's first point of error, reverse the trial court's judgment, and remand the cause
to the district court for further proceedings consistent with this opinion.



 J. Woodfin Jones,