The **TRAVELERS INSURANCE COMPANY, Plaintiff–Appellee–Cross–Appellant,**

**Health Insurance Association of America, American Council of Life Insurance, Life Insurance Council of New York, Inc., Aetna Life Insurance Co., Aetna Health Plans of New York, Inc., Mutual of Omaha Insurance Company, the Union Labor Life Insurance Company, Professional Insurance Agents of New York, Inc. Trust, Plaintiffs–Appellees,**

**New York State Health Maintenance Organization Conference and Health Services Medical Corporation, MVP Health Plan, Wellcare of New York, Mid–Hudson Health Plan, Oxford Health Plan, Capital District Physicians Health Plan, Choicecare Long Island, Independent Health, Travelers of New York, Physicians Health Services, Preferred Care and U.S. Healthcare, Plaintiffs–Intervenors–Appellees,**

v.

**George E. PATAKI, in his official capacity as Governor of the State of New York, Barbara DeBonno, M.D., in her official capacity as Commissioner of Health for the State of New York, Edward J. Muhl, in his official capacity as Superintendent of Insurance of the State of New York, Bryan Wing, in his official capacity as Commissioner of Social Services of the State of New York, Dennis C. Vacco, in his official capacity as Attorney General of the State of New York, Defendants–Appellants–Cross–Appellees,**

New York State Conference of Blue Cross & Blue Shield Plans, Empire Blue Cross and Blue Shield, Hospital Association of New York State, Intervenors–Defendants–Appellants–Cross–Appellees.

Nos. 1514–1516 and 1667, Dockets 93–7132L, 93–7134CON, 73–7148CON and 93–7194XAP.

United States Court of Appeals, Second Circuit.

Argued May 20, 1993.

Decided Oct. 25, 1993.

Reversed April 26, 1995.

Decided Aug. 15, 1995.

M. Patricia Smith, Asst. Atty. Gen., New York City (Dennis C. Vacco, Atty. Gen. of State of New York, of counsel), for defendants-appellants-cross-appellees.

Robert A. Bicks, Whitman Breed Abbott & Morgan, New York City (James J. Sabella, Patricia Anne Kuhn, New York City, of counsel, and Bartley J. Costello, III, Eileen M. Considine, Hinman, Straub, Pigors & Manning, P.C., Albany, NY, of counsel), for intervenors-defendants-appellants-cross-appellees Empire Blue Cross & Blue Shield and the New York State Conference of Blue Cross & Blue Shield Plans.

Jeffrey J. Sherrin, Sherrin & Glasel, Albany, NY, for intervenor-defendant-appellant-cross-appellee Hosp. Ass'n of New York State.

Craig P. Murphy, Windels, Marx, Davies & Ives, New York City, for plaintiff-appellee-cross-appellant The Travelers Ins. Co., and plaintiffs-appellees Health Ins. Ass'n of America, American Council of Life Ins., Life Ins. Council of New York, Inc., Mutual of Omaha Ins. Co., The Union Labor Life Ins. Co., Aetna Life Ins. Co. and Aetna Health Plans of New York, Inc. and Professional Ins. Agents of New York, Inc. Trust.

Diana L.S. Peters, Feder & Assocs., Washington, DC, for amicus curiae The Natl. Coordinating Committee for Multiemployer Plans.

Edward J. Groarke, Colleran, O'Hara & Mills, Garden City, NY, for amicus curiae Trustees of and The Pension, Hospitalization Benefit Plan of the Elec. Industry and Trust-

ees of and United Food and Commercial Workers Local 174 Health Care Fund, Trustees of and United Food and Commercial Workers Local 174 Retail Welfare Fund, and Trustees of and United Food and Commercial Workers Local 174 Commercial Health Care Fund.

Hugh Barber, Asst. Atty. Gen., Hartford, CT (Richard Blumenthal, Atty. Gen. of State of Conn., Richard J. Lynch, Phyllis E. Hyman, Asst. Attys. Gen., of counsel), for amicus curiae the State of Connecticut.

Before: LUMBARD and CARDAMONE, Circuit Judges.*

PER CURIAM:

In *Travelers Insurance Co. v. Cuomo,* 14 F.3d 708 (2d Cir.1993), we held in part that the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.,* preempted a New York statute that imposed surcharges on hospital bills ultimately paid by private health insurers. The Supreme Court reversed and remanded this portion of our decision, *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Co.,* — U.S. ——, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), holding that the surcharge statute's economic impact on ERISA plans was indirect only and not substantial enough to trigger ERISA preemption. The Court left open whether the surcharge statute was preempted with respect to self-insured ERISA plans. Finding that, on the present facts, an ERISA plan's self-insured status makes no difference, we reverse the judgment of the United States District Court for the Southern District of New York (Louis J. Freeh, then-*Judge* ) in part, and remand with instructions to enter partial judgment for the defendants.

I.

The background of this case may be found in three opinions, familiarity with which we assume. *See New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* — U.S. ——, 115 S.Ct. 1671, 131

---

* After letter briefs were submitted, Judge Joseph M. McLaughlin recused himself. The two remaining judges have decided this matter pursuant to § 0.14(b) of the Rules of this Court.

L.Ed.2d 695 (1995), *rev'g Travelers Ins. Co. v. Cuomo,* 14 F.3d 708 (2d Cir.1993), *aff'g in part, rev'g in part* 813 F.Supp. 996 (S.D.N.Y. 1993). At issue is a New York statute that imposed greater or lesser surcharges on patients, depending on who provided health care benefits to the patients. *See* N.Y.Pub. Health Law § 2807–c (McKinney 1993). For example, a patient who belonged to a self-insured plan had to pay a 13% surcharge, § 2807–c(1)(b), while one who belonged to a Blue Cross/Blue Shield plan (the "Blues") paid no surcharge at all, § 2807–c(1)(a). Some patients with commercial insurance had to pay as much as a 24% surcharge. § 2807–c(2–a)(a)–(2–a)(e). (Of course, the bills ultimately were paid by the patient's health insurer.) The surcharges were intentionally enacted to give the Blues a leg up by raising costs to private insurers, HMOs, and ERISA plans that self-insure.

A number of commercial insurers, acting as fiduciaries for the ERISA plans they administer, challenged, *inter alia,* the surcharge statute, arguing that it "relate[d] to" an ERISA plan, 29 U.S.C. § 1144(a), and was thus preempted by ERISA. (Several HMOs intervened as plaintiffs, too.) The plaintiffs moved, and the defendants cross-moved, for summary judgment on the ERISA preemption issue. The district court granted the plaintiffs' motion, ruling that ERISA preempted the surcharge statute, and denied the defendants' motion. *Travelers Ins. Co. v. Cuomo,* 813 F.Supp. 996 (S.D.N.Y.), *aff'd in part, rev'd in part,* 14 F.3d 708 (2d Cir.1993), *rev'd sub nom. New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* —— U.S. ——, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).

The defendants appealed, and we affirmed the district court's ruling that ERISA preempted the surcharge statute. We concluded that the economic impact on ERISA plans, though indirect, was substantial enough to trigger preemption. *Travelers Ins. Co.,* 14 F.3d at 717–23. We reasoned that ERISA preempted any state law imposing surcharges that "purposely interfere[d]" with the choices that ERISA plans make for health care coverage." *Id.* at 719. Furthermore, we concluded that ERISA preempted

any state law that "impose[d] a significant economic burden on commercial insurers and HMOs," *id.* at 721, especially when the law "*substantially* increase[d] the cost to ERISA plans of providing beneficiaries with a given level of health care benefits," *id.* at 720 (emphasis added). Finally, we suggested that ERISA preempted any state law that imposed surcharges which forced ERISA plans either to increase "plan costs or reduce plan benefits." *Id.*

The Supreme Court reversed, holding that an "indirect" economic effect does not trigger ERISA preemption, unless it produces "such acute, albeit indirect, economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." *Travelers,* —— U.S. ——, 115 S.Ct. at 1683. The Court concluded that the surcharge statute, which inflated private insurers' hospital bills by as much as 24%, neither forced ERISA plans to adopt certain coverage nor restricted their choice of insurers. Rather, the statute "affect[ed] only indirectly the relative prices of insurance policies, a result no different from myriad state laws in areas traditionally subject to local regulation, which Congress could not possibly have intended to eliminate." *Id.*

The Court further explained:

An indirect economic influence ... does not bind plan administrators to any particular choice and thus function as a regulation of an ERISA plan itself; commercial insurers and HMOs may still offer more attractive packages then the Blues. Nor does the indirect influence of the surcharges preclude uniform administrative practice or the provision of a uniform interstate benefit package if a plan wishes to provide one. It simply bears on the costs of benefits and the relative costs of competing insurance to provide them. It is an influence that can affect a plan's shopping decisions, but it does not affect the fact that any plan will shop for the best deal it can get, surcharges or no surcharges.

*Id.* at ——, 115 S.Ct. at 1679. The Court footnoted, however, that it did not "address the [13%] surcharge statute insofar as it applies to self-insured funds," because we

had never "expressly address[ed]" it in our opinion, and because the district court had referred to it only in staying its decision pending appeal. *Id.* at ——, 115 S.Ct. at 1675 at n. 4. The Court therefore left for us this issue on remand. *Id.*

## II.

■ Plaintiffs who are fiduciaries for self-insured ERISA plans have seized upon the foregoing footnote to suggest that we let the district court first consider whether ERISA preempts the surcharge statute with respect to self-insured plans. On the merits, they argue that the economic impact of the New York statute on self-insurers triggers ERISA preemption under the "relates to" test because the statute: (1) forces the plans to buy insurance, rather than self-insure; (2) directly depletes self-insured plans' assets; and (3) "refers" to ERISA plans. For these three reasons, they contend that the New York statute is preempted. We are not persuaded.

■ The suggestion that we remand to the district court is rejected. The record reflects no material dispute of fact regarding the effect of the surcharge statute on self-insured plans, leaving us with a pure question of law, which we may decide in the first instance. *See Jeffries v. Harleston,* 52 F.3d 9, 13–14 (2d Cir.1995) (deciding that, as a matter of law, Supreme Court decision handed down after we affirmed a jury verdict for plaintiff compelled judgment for the defendants), *cert. denied,* —— U.S. ——, 116 S.Ct. 173, —— L.Ed.2d —— (1995); *cf. Greene v. United States,* 13 F.3d 577, 586 (2d Cir.1994) (appellate court may reach issue not raised below "if there is no need for additional fact finding").

■ Turning to the merits, we see no statutory basis for treating self-insured plans differently from the other plans when determining whether a state law "relates to," and is thus preempted by, ERISA. ERISA supersedes "all State laws insofar as they ... relate to any employee benefit plan." 29 U.S.C. § 1144(a). Under the "savings" clause, however, preemption "stops short of 'any law of any State which regulates insurance.'" *Travelers,* —— U.S. at ——, 115 S.Ct. at 1675 (quoting § 1144(b)(2)(A)). The

savings clause, in turn, is itself limited by the so-called "deemer" clause: "an employee welfare benefit plan may not 'be deemed to be an insurance company or other insurer.'" *Id.* (quoting § 1144(b)(2)(B)).

■ Thus, as we read ERISA's Delphic preemption provision, a plan's self-insured status matters only if a state law that should generally be preempted under § 1144(a) qualifies as a law regulating insurance under the savings clause, § 1144(b)(2)(A). If a state law regulates insurance, it is generally saved from preemption, § 1144(b)(2)(A), but this "saving" cannot apply to a self-insured plan, § 1144(b)(2)(B). *See, e.g., FMC Corp. v. Holliday,* 498 U.S. 52, 61, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990); *General Motors Corp. v. California State Bd. of Equalization,* 815 F.2d 1305, 1309–11 (9th Cir.1987) (Kennedy, *J.*) (the three-stage framework for analyzing ERISA preemption claims is well established). Because the Court has now held in *Travelers* that ERISA preempted *none* of the surcharges (including the 13% surcharge) generally under § 1144(a), neither the savings clause exception nor the deemer clause exception to the savings clause exception applies.

Indeed, the parties have tacitly conceded as much. Until now, the parties have never argued that a law that does not "relate to" ERISA plans *generally* might, nevertheless, still "relate to" self-insured plans *specifically.* Instead, they mentioned self-insured plans to the district court, to us, and to the Supreme Court only when discussing whether the surcharge statute was a law regulating insurance and, if so, whether self-insured ERISA plans could be deemed "insurers."

In any event, there is no material dispute of fact on the effect of the 13% surcharge. Although that surcharge represented roughly 2.4% of one self-insured plan's health benefit costs, there was no proof that this increase in costs in fact forced previously self-insured plans to buy insurance instead. Indeed, the continued administration of self-insured plans by some of the *Travelers* plaintiffs, even though self-insured plans have had to pay the surcharge during this appeal, sug-

gests that few, if any, plans have decided not to self-insure.

In addition, whatever pressure the surcharge may exert on an ERISA plan's decision to self-insure is no different from other economic influences on a plan's decision to purchase insurance. The surcharge simply affects the relative costs of the various alternatives—Blue Cross coverage, commercial insurance coverage, HMO membership, and self-insurance. It does "not bind plan administrators to any particular choice"; it simply affects "a plan's shopping decisions." *Travelers,* —— U.S. at ——, 115 S.Ct. at 1679. And, under *Travelers,* states may create rate differentials that influence such choices.

True, before the Court's decision in *Travelers,* we had held that ERISA preempted any law that targeted the healthcare industry and "directly" affected an ERISA plan, no matter how minimally that law depleted ERISA plans' assets. *See NYSA–ILA Med. & Clinical Servs. Fund v. Axelrod,* 27 F.3d 823 (2d Cir.1994), *vacated sub nom. Chassin v. NYSA–ILA Med. & Clinical Servs. Fund,* —— U.S. ——, 115 S.Ct. 1819, 131 L.Ed.2d 742 (1995) (vacating our opinion in light of *Travelers* ). Thus, if an ERISA plan ran a hospital, and a State taxed payments received by hospitals, that was a direct impact, and ERISA preempted the tax. *Id.* at 826–28. We reasoned that the tax directly depleted the plan's assets, and thus "related to" the plan "in a very direct way." *Id.* at 827. In addition, we suggested in dicta that ERISA preempts any law that targeted the healthcare industry "[b]ecause this industry is, by definition, the realm where ERISA welfare plans must operate." *Id.*

The surcharge statute, however, does not "directly" deplete assets, at least not as directly as did the statute in *NYSA–ILA.* That statute taxed payments made by patients to an ERISA plan's hospital. *NYSA–ILA,* 27 F.3d at 825–26. There was no third party between the plan and the tax. Here, the statute raises costs to a third party—the patient—who is liable for the balance of any bill which an ERISA plan or insurance carrier refuses to pay. Granted, self-insured plans are one step closer to the surcharge than are insured plans—the latter will not see increased costs until their insurers raise premiums. But, self-insured plans are still not directly liable for the surcharge. In any case, in the wake of *Travelers* (and the Court's decision to vacate *NYSA–ILA* ), we question whether we should continue to distinguish between laws that directly deplete ERISA plans' assets and laws that only indirectly do so.

■ Finally, we see no "reference" to ERISA plans sufficient to invoke preemption. We are well aware that a statute need not refer expressly to "ERISA plans" or "employee welfare plans subject to ERISA" to trigger preemption under the "reference" line of cases. *See FMC Corp.,* 498 U.S. at 59, 111 S.Ct. at 408. But, *FMC* and the cases upon which it relied are not controlling. The statute in *FMC* referred to "[a]ny program, group contract or other arrangement for payment of benefits." *Id.* The statute in *District of Columbia v. Greater Washington Board of Trade,* —— U.S. ——, ——, 113 S.Ct. 580, 582, 121 L.Ed.2d 513 (1992), referred to "existing health insurance coverage of the employee." And, the statute in *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 828 n. 2, 108 S.Ct. 2182, 2184 n. 2, 100 L.Ed.2d 836 (1988) referred expressly to "employee benefit plan[s] or program[s] subject to [ERISA]." Finally, the statute in *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 140, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990), created a cause of action for employees who were terminated by employers "to avoid contributing to or paying benefits under the employee's pension benefit fund."

In contrast, the New York statute here imposed a 13% surcharge on "[p]ayments to general hospitals for reimbursement of inpatient hospital services provided to patients . . . enrolled in a *self-insured fund.*" N.Y.Pub.Health Law § 2807–c(1)(b) (emphasis added). Conspicuously absent was any mention of ERISA, pension plans, health insurance coverage, health benefits, employee benefits, or, for that matter, even benefits. Moreover, *Travelers* itself affirmed that the surcharge statute did not refer to ERISA plans generally because "[t]he surcharges are imposed upon patients and HMOs re-

gardless of whether the commercial coverage or membership, respectively, is ultimately secured by an ERISA plan." —— U.S. at ——, 115 S.Ct. at 1677. The same holds true for self-insured plans: the surcharge applies whether or not the self-insured plan is an ERISA plan.

### III.

In short, on these facts, the Supreme Court's opinion in *Travelers* leaves no room for claiming that ERISA preempts the New York surcharge statute, even with respect to self-insured plans. Accordingly, we reverse the district court in part and remand with instructions to enter judgment to the defendants on the issue of ERISA preemption of the surcharge statute.