**UNITED PAPERWORKERS INTERNATIONAL UNION LOCAL 1468, et al.**

v.

**IMPERIAL HOME DECOR GROUP.**

**C.A. No. 99–274ML.**

United States District Court, D. Rhode Island.

Dec. 2, 1999.

Mark Gursky, Holly K. Herndon, Providence, RI, for plaintiff.

Jeffrey B. Keiper, McDonald, Hopkins, Burke & Haber, Cleveland, OH, Michael R. Fiore, Gilmore, Rees & Carlson, Franklin, MA, for defendant.

*MEMORANDUM AND ORDER*

LISI, District Judge.

The question presented is whether the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, preempt R.I.Gen.Laws § 28–7–19.2, Rhode Island's "tin parachute"[1] statute. For the reasons stated herein, the Court adopts the magistrate judge's determination that ERISA does

---

1. "Tin parachute" means "[a]n employment-contract [or statutory] provision that grants a corporate employee (esp. one below the executive level) severance benefits in the event of a takeover. These benefits are typically less lucrative than those provided under a golden parachute." Black's Law Dictionary 1492 (7th ed.1999). *See also Simas v. Quaker Fabric Corp. of Fall River,* 6 F.3d 849 (1st Cir. 1993) (employing term).

preempt the Rhode Island statute. Thus, the defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is granted.

## I. Standard of Review

In reviewing a motion to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6), this Court "accept[s] well-pleaded facts as true and draw[s] all reasonable inferences from those facts in favor of the plaintiff." *Figueroa v. Rivera*, 147 F.3d 77, 80 (1st Cir.1998). "Dismissal is appropriate 'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" *Id.* (quoting *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990)). With these procedural canons firmly in place, the Court proceeds to a brief recitation of the facts and travel of the case.

## II. Facts and Travel of the Case

The plaintiffs are the United Paperworkers International Union Local 1468 and a number of its individual members (collectively "the Union"). The Union's principal place of business is in Westerly, Rhode Island. The defendant is Imperial Home Decor Group, a corporation headquartered and incorporated in Cleveland, Ohio.

In a letter dated February 19, 1998, Imperial Wallcoverings Inc. ("Imperial") informed the Union of an upcoming sale or merger[2] with another company called Borden Decorative Products ("Borden"). According to the letter, the new entity would be known as Imperial Home Decor Group ("IHDG"). The letter also informed the Union that in or around August 1998, IHDG's manufacturing facility in Ashaway, Rhode Island would close.

On March 18, 1998, Imperial and Borden merged to form IHDG. On July 3, 1998, IHDG ceased manufacturing operations at the Ashaway facility and terminated all of the facility's production and maintenance employees. At the time, those employees were members of the Union. Thereafter, IHDG paid the employees a severance payment in accordance with the parties' collective bargaining agreement.

The complaint alleges that the March 18 merger actually involved a "transfer of control" as that term is defined in R.I.Gen. Laws § 28–7–19.2, Rhode Island's tin parachute statute. By virtue of the merger, IHDG became the beneficial owner of fifty percent or more of Imperial's outstanding voting securities, making IHDG a "control transferee" for purposes of § 28–7–19.2. The Union avers that IHDG, as control transferee, did not satisfy its duty to pay each of the terminated employees a severance payment in accordance with the statutorily prescribed formula, i.e. the product of twice the particular employee's weekly compensation multiplied by each year of service that the employee had completed. *See* § 28–7–19.2(b)–(c). The Union contends that a severance payment as provided by the statute was due to each eligible employee within four pay periods after his or her last day on the job.

To complete the equation, the Union avers that the employees had not contracted to receive a severance payment larger than that provided by § 28–7–19.2 in the event of a termination. The Union's filing also suggests that each complainant had served at the Ashaway manufacturing facility for more than three years prior to the March 18, 1998, merger.

IHDG now moves to dismiss the Union's complaint pursuant to Fed.R.Civ.P. 12(b)(6). In a written Report and Recommendation dated October 5, 1999, Magistrate Judge Lovegreen recommended that this Court should grant IHDG's motion based upon his determination that ERISA preempted Rhode Island's tin parachute statute. *See* 29 U.S.C. § 1144(a). The Union filed a timely objection to the Report and Recommendation.

---

**2.** The Union's complaint uses the terms "sale" and "merger" to describe the transaction. For purposes of this decision, it is immaterial whether the transfer of control was a sale or a merger.

## III.  Discussion

Pursuant to Fed.R.Civ.P. 72(b), this Court's charge is to make a "de novo determination upon the record ... of any portion of the magistrate judge's disposition to which specific written objection has been made." Specifically, the Union contends that Magistrate Judge Lovegreen committed two errors: (1) the magistrate judge erred in concluding that the tin parachute statute constituted an "employee benefit plan" for purposes of ERISA's preemption clause; and (2) the magistrate judge erred in concluding that ERISA preempts the Rhode Island tin parachute statute.

### A.  R.I.Gen.Laws § 28–7–19.2

Rhode Island's tin parachute statute provides a measure of economic protection for workers who lose their jobs when a new person or entity assumes control of their employer by acquiring fifty percent or more of the employer's outstanding voting securities. *See generally* § 28–7–19.2(a)–(c). The acquiring person or entity is termed the "control transferee," *see* § 28–7–19.2(a)(2), and the acquired employer is the "control transferor," *see* § 28–7–19.2(a)(3). Consistent with the allegations in the complaint, the Court will assume that IHDG is the control transferee and Imperial is the control transferor.

Subsections (b) and (c) of § 28–7–19.2 purport to erect substantive protections for employees who are terminated by virtue of the change in control. Those provisions provide as follows:

(b) Any employee of a control transferor whose employment is terminated within twenty-four (24) calendar months after the transfer of control of his or her employer is entitled to a one time lump sum payment from the control transferee equal to the product of twice his or her weekly compensation multiplied by each completed year of service. This severance pay to eligible employees shall be in addition to any final wage payment to the employee and shall be made with-

in one regular pay period after the employee's last day of work.

(c) Any employee of a control transferor whose employment is terminated within the shorter of the following periods prior to a control transfer: (i) twelve (12) calendar months, or (ii) the period of time between which the control transferee obtained a five percent (5%) interest in the voting securities of the control transferor and consummated a control transfer by obtaining a fifty percent (50%) or greater interest pursuant to subsection (a)(8), is entitled to a one time lump sum payment from the control transferee equal to the product of twice his or her weekly compensation multiplied by each completed year of service. This severance pay to eligible employees shall be in addition to any final wage payment to the employee and shall be made within four (4) regular pay periods after the transfer of control.

The statutory predicate to receiving the one-time, lump-sum payment is the control transferee's termination of an employee's employment. The statute defines "[t]ermination of employment" as "the involuntary termination of an employee's employment consistent with the eligibility standards for unemployment benefits under chapter 44 of [title 28 of the General Laws of Rhode Island]." § 28–7–19.2(a)(7). The Union alleges that IHDG terminated its members' employment and that they were entitled to statutory severance pay in the amounts prescribed by § 28–7–19.2(b)–(c). Taking all of the well-pleaded facts as true, the Court assumes that the statute's exceptions to the general rule of payment do not apply. *See* § 28–7–19.2(d) (listing exceptions to general rule).

### B.  ERISA Preemption

In 1974, Congress enacted ERISA "to safeguard employees from the abuse and mismanagement of employee benefit funds and also to protect employers from a 'patchwork' scheme of regulations regard-

ing employee benefits." *Champagne v. Revco D.S., Inc.,* 997 F.Supp. 220, 221 (D.R.I.1998) (citing *Belanger v. Wyman–Gordon Co.,* 71 F.3d 451 (1st Cir.1995)). To accomplish those goals, "ERISA sets out a comprehensive system for the federal regulation of private employee benefit plans, including both pension plans and welfare plans." *District of Columbia v. Greater Wash. Bd. of Trade,* 506 U.S. 125, 127, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992).

To "ensure[ ] that the administrative practices of a benefit plan will be governed by only a single set of regulations," *see Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), ERISA contains "deliberately expansive" preemption provisions, *see Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The pertinent ERISA preemption language reads as follows:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

29 U.S.C. § 1144(a). The application and operation of § 1144(a) are the focus of the parties' dispute. IHDG argues that ERISA's preemption language trumps the Rhode Island tin parachute legislation; the Union argues that § 28–7–19.2 falls outside of ERISA's broad preemptive reach.[3]

C. Analysis

1. Precedential Guideposts

The substance of the Union's objection to the Report and Recommendation concerns the magistrate judge's determination that § 28–7–19.2 relates to an employee benefit plan for purposes of § 1144(a). The crucial issue that this Court must address is whether the mandatory provisions of § 28–7–19.2 constitute an employee benefit plan. The holdings in two seminal cases are critical to the Court's analysis: *Fort Halifax,* 482 U.S. at 1, 107 S.Ct. 2211, and *Simas v. Quaker Fabric Corp. of Fall River,* 6 F.3d 849 (1st Cir.1993). The former provides a general framework that guides this Court's analysis; the latter provides the analytical rubric that applies to the legal issues now before the Court.

In *Fort Halifax,* the Court addressed whether a Maine severance pay statute constituted an employee benefit plan for purposes of § 1144 ERISA preemption. Pursuant to that statute, an employer who ceased operating a plant of one hundred or more employees, or who relocated the operations of such a plant to a place more than one hundred miles away, would have to provide each employee who had been employed in the plant for at least three years a severance payment equal to the product of one week's pay multiplied by the number of years that the particular employee had been employed at the facility. *See* 482 U.S. at 4 n. 1, 5, 107 S.Ct. 2211. The Supreme Judicial Court of Maine held that ERISA did not preempt the state statute because it did not constitute a plan created by an employer to which § 1144(a) would otherwise apply.

The Supreme Court affirmed the state court's judgment but rejected its reasoning. The Court determined that the Maine statute did not create an employee benefit plan subject to ERISA preemption because the employer did not have to maintain "an ongoing administrative program" to fulfill the statute's obligations. *See id.* at 11–12, 107 S.Ct. 2211. As the Court explained, "[t]he requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation." *Id.* at 12, 107 S.Ct. 2211.

---

**3.** Neither party argues that IHDG was somehow exempt from the scope of ERISA's coverage. *See, e.g.,* 29 U.S.C. § 1003 (listing exceptions).

The Court suggested that a different resolution of the preemption question might lie if the statute required the employer to integrate a "state-mandated ongoing benefit plan" with an existing plan or if the statute required the employer to establish a separate plan to process and pay benefits. *See id.* at 14, 107 S.Ct. 2211. "Thus, if a State required a benefit whose regularity of payment necessarily required an ongoing benefit program, it could not evade pre-emption by the simple expedient of somehow formally characterizing the obligation as a one-time, lump-sum payment triggered by the occurrence of a certain contingency." *Id.* at 18 n. 12, 107 S.Ct. 2211. The Court did not, however, proffer a specific example of a suspect benefit program.

In *Simas*, 6 F.3d at 849, the United States Court of Appeals for the First Circuit had an opportunity to decide some of the questions left open in *Fort Halifax. Simas* presented the court of appeals with legal issues strikingly similar to those presented in the Union's objection to the Report and Recommendation here. In *Simas*, the court of appeals held that ERISA preempted Massachusetts's tin parachute statute. *See* 6 F.3d at 856; Mass.Gen. Laws ch. 149, § 183 (1989).

The Massachusetts tin parachute statute provides in pertinent part:

(b) Any employee of a control transferor whose employment is terminated within twenty-four calendar months after the transfer of control of his employer is entitled to a one time lump sum payment from the control transferee equal to the product of twice his weekly compensation multiplied by each completed year of service. Such severance pay to eligible employees shall be in addition to any final wage payment to the employee and shall be made within one regular pay period after the employee's last day of work.

(c) Any employee of a control transferor whose employment is terminated within the shorter of the following periods prior to a control transfer: (1) twelve calendar months; or (2) the period of time between which the control transferee obtained a five percent interest in the voting securities of the control transferor and consummated a control transfer by obtaining a fifty percent or greater interest pursuant to a transfer of control as defined herein, is entitled to a one time lump sum payment from the control transferee equal to the product of twice his weekly compensation multiplied by each completed year of service. Such severance pay to eligible employees shall be in addition to any final wage payment to the employee and shall be made within four regular pay periods after such transfer of control.

Mass.Gen.Laws ch. 149, § 183(b)–(c). The statute defines "[t]ermination of employment" as "the involuntary termination of an employee's employment consistent with the eligibility standards for unemployment benefits under section twenty-five of chapter one hundred and fifty-one A." *Id.* § 183(a).

The *Simas* Court affirmed the district court's determination that § 183 created an employee benefit plan for purposes of ERISA preemption. While noting that the Maine statute upheld in *Fort Halifax* was similar to § 183, the court of appeals recognized that § 183 also contained a number of substantive differences that made it an "employee benefit plan" subject to ERISA preemption. In short, those differences required the employer to maintain an "ongoing administrative mechanism for determining, as to each employee discharged within two years after the takeover, whether the employee was discharged within the several time frames fixed by the tin parachute statute and whether the employee was discharged for cause or is otherwise ineligible for unemployment compensation under Massachusetts law." *Simas*, 6 F.3d at 853.

One problem that the *Simas* Court found particularly vexing was the employer's continuing obligation to apply the "for

cause" standard in its efforts to determine whether a particular employee would be eligible for the severance payment. *See id.* at 853. This determination would be necessary because receipt of the severance payment was contingent upon a determination that the termination of a particular employee's employment was an involuntary termination consistent with the eligibility standards propounded in the Massachusetts unemployment laws. *See id.* ("More important, whether a payment is due depends in Massachusetts not merely on the employee's status as a three-year employee but on whether the employee is also eligible for unemployment compensation under Massachusetts law. This is effectively a cross-reference to other requirements, most importantly that the employee not have been discharged for cause."); § 183(a) (defining "termination of employment" and cross-referencing the Massachusetts unemployment laws). This determination would require the employer "to maintain records, apply the 'for cause' criteria, and make payments or dispute the obligation." *Simas,* 6 F.3d at 853. The Court considered these requirements to be precisely the kind of ongoing administrative obligations that would result in an employee benefit plan under the *Fort Halifax* standard.

## 2. The Rhode Island Tin Parachute

Like its Massachusetts counterpart, the Rhode Island tin parachute statute contains a cross-reference to the state's unemployment benefits laws. *See* § 28–7–19.2(a)(7). Before an employee is eligible to receive the statutory severance payment, the employer must determine whether the employee's termination of employment was an "involuntary termination . . . consistent with the eligibility standards for unemployment benefits" propounded in chapter 44, title 28 of the General Laws. *See id.* A careful examination of Rhode Island's unemployment benefits laws, *see generally* R.I.Gen.Laws. §§ 28–44–1 to 28–44–70, reveals that compliance with the tin parachute statute would re-

quire employers to assume ongoing administrative obligations that would result in the kind of employee benefit plan that ERISA preempts.

The analysis begins with R.I.Gen.Laws § 28–44–18. Section 28–44–18 provides that "[a]n individual who has been discharged for proved misconduct connected with his or her work shall thereby become ineligible for benefits." The section continues to define "misconduct" to be "deliberate conduct in wilful disregard of the employer's interest, or a knowing violation of a reasonable and uniformly enforced rule or policy of the employer, provided that such violation is not shown to be as a result of the employee's incompetence." § 28–44–18. This provision of Rhode Island law is nearly identical to the Massachusetts unemployment benefits law that proved to be the linchpin of the *Simas* preemption analysis. *See* 6 F.3d at 853.

The Commonwealth's unemployment benefits statute provided that an individual who had left work due to "deliberate misconduct in wilful disregard of the employing unit's interest, or to a knowing violation of a reasonable and uniformly enforced rule or policy of the employer, provided that such violation is not shown to be as a result of the employee's incompetence," Mass.Gen.Laws. ch. 151A, § 25(e), would be ineligible to receive unemployment compensation benefits. This "for cause" language mirrors the "for cause" language of § 28–44–18, placing Rhode Island's tin parachute statute squarely within the ambit of *Simas*'s preemptive reach.

The "for cause" determination that § 28–44–18 creates is not the only similarity between Rhode Island's chapter 44 and Massachusetts's chapter 151A. Both statutes require the beneficiary to be capable of working and to actively seek work, *compare* R.I.Gen.Laws § 28–44–12(a), *with* Mass.Gen.Laws ch. 151A, § 24(b); both statutes prohibit the receipt of benefits by one who voluntarily leaves employment

without good cause, *compare* R.I.Gen. Laws § 28–44–17, *with* Mass.Gen.Laws ch. 151A, § 25(e)(1); and both statutes prohibit a beneficiary from receiving unemployment benefits from any other source, *compare* R.I.Gen.Laws § 28–44–19, *with* Mass. Gen.Laws ch. 151A, § 25(d).

In light of *Simas*'s concern that the Massachusetts tin parachute statute would require employers to institute "ongoing administrative mechanisms ... for determining ... whether the employee was discharged for cause or is otherwise ineligible for unemployment compensation under Massachusetts law," 6 F.3d at 853, this Court must conclude that Rhode Island's tin parachute implicates the same concerns. In short, the minor semantic differences between the relevant Massachusetts and Rhode Island statutes are insufficient to overcome their major substantive similarities. It is clear that § 28–7–19.2 creates an employee benefit plan that is subject to ERISA preemption.[4]

Because this Court has concluded that the Rhode Island tin parachute requires an employer to maintain an ongoing administrative mechanism for determining eligibility for receipt of the statutory severance payment, i.e. an "employee benefit plan," federal law preempts § 28–7–19.2. Therefore, Rule 12(b)(6) mandates the dismissal of the Union's complaint.

### 3. Policy Arguments

The Union argues that *Simas* should not bind this Court's consideration of § 28–7–19.2 because the *Simas* Court improperly applied *Fort Halifax* to reach a result that is contrary to the state's interest in protecting its workforce. Because *Simas* provides a binding precedent that is directly on point, that argument merits no further consideration.

---

4. ERISA *preempts only* those state laws that "relate to" an employee benefit plan. The Court has no trouble concluding that Rhode Island's tin parachute relates to an employee benefit plan. *See Fort Halifax,* 482 U.S. at 8, 107 S.Ct. 2211 ("We have held that the words 'relate to' should be construed expansively:

### IV. Conclusion

For the reasons outlined herein, the Court adopts Magistrate Judge Lovegreen's recommendation and dismisses the plaintiffs' complaint pursuant to Fed. R.Civ.P. 12(b)(6).

SO ORDERED.

'[a] law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.' " (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983))).